## DECLARATION OF FORREST FENN

I, Forrest Fenn, hereby declare as follows:

1.      I am the named Defendant in Case No. 3:20-cv-08123 currently pending before the United States District Court for the District of Arizona (the "Lawsuit"). I am an artist, former gallery owner, collector, author, and a retired pilot in the United States Air Force, where I obtained the rank of Major and was awarded the Silver Star, the Bronze Star, three Distinguished Flying Crosses, fourteen Air Metals, and a Purple Heart during my service in the Vietnam War. This Declaration is based upon my personal knowledge, and I am a competent witness to the facts stated herein.

2.      I am a resident of Santa Fe, New Mexico, where I have continuously lived with my wife of 66 years, Peggy, since 1972.

3.      While serving in the military, I was stationed at Luke Air Force Base, west of Phoenix for approximately four years, I believe between 1959 and 1964. Other than this time period, I have never resided in the State of Arizona.

4.      I have never maintained an office or other place of business in Arizona, maintained any bank accounts, post office boxes, or telephone listings in Arizona (except perhaps during my time at Luke Air Force Base), owned any property or paid any taxes in Arizona, or otherwise had any substantial, continuous or systematic business contacts with that State.

5.      In 1998, I was diagnosed with cancer and was told that I had a 20% chance of survival. That diagnosis inspired me to hide a treasure chest (the "Chest") in an outdoor location in the Western United States with the purpose of creating a public search for it.

6.      In 2010, after recovering from my illness, I self-published (through my New Mexico limited liability company, One Horse Land & Cattle Ltd. Co.) a collection of short stories from my life entitled *The Thrill of the Chase: A Memoir* (the "Memoir").  The Memoir describes the treasure chest that I personally hid "in the mountains somewhere north of Santa Fe," and provided hints to the Chest's precise location, including a poem that contains nine clues leading potential searchers to the Chest.  I did not move the Chest from its original hiding place, nor did I ever direct anyone else to do so.  None of the drawings or illustrations in the Memoir were made by any artists located in Arizona when the Memoir was written and initially published.

7.      I have never earned any money from the writing, publication, or sale of the Memoir.  After I had the Memoir produced at my own expense in 2010, I gifted a few copies to friends and gave the remaining copies to Dorothy Massey, owner of the Collected Works Bookstore and Coffeehouse in Santa Fe (collectively, "Collected Works") to do with as she saw fit.  I also granted Collected Works permission to re-print, sell, and distribute the Memoir for its sole benefit.

8.      Collected Works voluntarily committed to donate 10% of the gross revenue received by Collected Works from the sale of the Memoir to assist individuals suffering from cancer and other hardships, and Collected Works subsequently increased the amount

of that voluntary donation to 15%.  None of the donated funds has been used by me or my family.

9.      Since the first printing of the Memoir in 2010, I have not participated or directed in any fashion the re-printing, binding, selling, advertisement, or distribution of the Memoir.  Instead, Collected Works unilaterally decides where and how to sell and distribute the Memoir, without any advice or consultation from me.  In short, I have never sold the Memoir to anyone, including the Plaintiff in the Lawsuit, Brian Erskine.

10.      I have never solicited press coverage or interviews to discuss the Memoir. All such interviews have been at the request of others, such as a producer or reporter.

11.      Six years ago, in 2014, I was presented with the "True Westerner Award" by *True West* magazine in recognition for my contribution to and preservation of America's Western heritage.  I have no affiliation with *True West* magazine and I did not seek out, apply for, or otherwise solicit that Award, which was given to me in the form of a small bronze statue at a reception organized by *True West* at a hotel in Tucson, Arizona, on March 15, 2014.  Other than the statue, I was not provided with any renumeration for appearing at this event. To receive the Award, I drove to Tucson with my grandson and paid for the cost of that transportation. *True West* paid for my hotel, but I paid all other costs associated with this visit to Tucson, which lasted less than 24 hours before my return to Santa Fe.

12.      I have never met with Brian Erskine.  I may have spoken to him on the phone on one occasion when he called me.  Along with tens of thousands of emails from other people, I received emails from Mr.Erskine attempting ingratiate himself to me and to

communicate about the Chest and the search for it.  I did not respond to the substance of his inquiries.

13.    Mr. Erskine also attempted to intervene in a lawsuit filed in the United States District Court for the District of New Mexico under Case No. 1:19-cv-1124 WJ/KK, in which the Plaintiff, David Hanson, claimed that he was entitled to the Chest for various unfounded reasons  (the "Hanson Case").  Mr. Erskine attempted to intervene as a party defendant claiming that he -- not Mr. Hanson -- was entitled to the Chest or its value because he had allegedly "solved" the poem in my Memoir.  The Hanson Case was dismissed with prejudice before Mr. Erskine's motion to intervene was considered by the Court.

14.  I have never entered into any oral or written contract with Mr. Erskine (or anyone else) concerning the Chest or its discovery, nor was my Memoir intended as an offer to reward anyone who simply identified the location of the Chest without actually finding and retrieving it.  Instead, as the fourth stanza of the poem in my Memoir makes clear, anyone finding the Chest could "Just take the chest and go in peace."

15. In early June 2020, I personally verified that the Chest was found by a searcher, who has requested to remain anonymous.   Since the Chest was discovered, I have personally seen the Chest and its contents.  I also met the person who found the Chest and confirmed that he discovered it in the location I left it about ten years ago.  I also confirmed that he had used the clues in the poem and hints in the Memoir to locate and find the Chest.

16.    The Chest was not found anywhere near the location Mr. Erskine asserts that the poem leads, namely a location next to the so-called Million Dollar Highway between

4

Ouray and Silverton, Colorado (the "Erskine Site"). Indeed, I have never been to nor seen the Erskine Site, and I was not even aware that the Erskine Site existed until Mr. Erskine attempt to intervene in the Hanson Case. The clues in the poem and the hints in the Memoir do not have anything to do with the Erskine Site.

16.     I am almost 90 years old and, along with my two daughters, I am a primary caregiver for my wife Peggy, who is 87 years old and in very poor health. She is unable to travel and we will both suffer great hardship if I am required to travel to Arizona from our home in Santa Fe to defend the Lawsuit.

15.     I declare under penalty of perjury that the foregoing statements are true and correct.

EXECUTED this 20th day of June, 2020.

Forrest Fenn

[2750324]