James W. Armstrong (No. 009599)
james.armstrong@sackstierney.com
Brian E. Ditsch (No. 009075)
brian.ditsch@sackstierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., Fourth Floor
Scottsdale, Arizona 85251-3693
Telephone: (480) 425-2600

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Erskine,<br><br>        Plaintiff,<br><br>v.<br><br>Forrest Fenn,<br><br>        Defendant. | No. 3:20-cv-08123-PCT-JJT<br><br>**NOTICE OF CERTIFICATION OF CONFERRAL** |

    Defendant Forrest Fenn is filing with this Notice a Motion to Dismiss Complaint for Lack of Personal Jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Pursuant to the Court's Order dated June 23, 2020, counsel for Mr. Fenn have conferred by email with Plaintiff Brian Erskine to determine whether his deficient pleading could be cured by a permissible amendment of the Complaint. Copies of those emails dated June 23 and June 24, 2020, are attached hereto. As revealed by those emails, the parties have been unable to agree that the jurisdictional defect in Plaintiff's Complaint is curable by amendment, and therefore, it is not possible to avoid the filing of Defendant's Motion to Dismiss.

DATED this 25th day of June, 2020.

                                        SACKS TIERNEY P.A.

                                        */s /Brian E. Ditsch*
                                        James W. Armstrong
                                        Brian E. Ditsch
                                        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Certification of Conferral to the following CM/ECF registrants:

Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301
*Plaintiff pro per*

/s/ *Toni Cooper*

[275760]

3

**Brian E. Ditsch**
___

| | |
|---|---|
| **From:** | Brian Erskine <kattigara@gmail.com> |
| **Sent:** | Wednesday, June 24, 2020 12:38 PM |
| **To:** | Brian E. Ditsch |
| **Cc:** | James W. Armstrong |
| **Subject:** | Re: Erskine v. Fenn [IWOV-EMM.FID723432] |

Hi Brian,

Let me begin by communicating respect for your and colleagues' eminent law careers and educations. The Complaint truthfully states that I grew up in Oregon and live in Arizona, but as Defendant knows, I was born on Thanksgiving almost at Plymouth Rock and earned degrees from Harvard and Wharton, rowing in the "Head of the Charles" four times, as I tell you with humor because Texan Defendant outed me as an Easterner.

By the Judge's order regulating motion practice, I have a detailed response to your proposed Rule 12 motion challenging APJ. This lengthy response does counter your email.

If perhaps I am verbose or repetitive in conference, it is for your understanding, because unlike litigants, you might be new to key case drivers.

**(1)** The Complaint as filed articulates APJ mainly by Defendant's Arizona activities as honor guest at a major Quest promotional Event.

But, I understated a key driver of APJ, and my good faith aim was thus to shield the 'prominent Arizonan' in Complaint Footnote 17 (Items 24 and 25). As I am here to dispel mysteries, I reveal the 'prominent Arizonan' as Event sponsor Bob Boze Bell, *True West* CEO and Editor.

In August 2018, I became the Solver of the Quest for the Location by Photo (see Exhibits) and sought connection with Defendant. As 'garbage communication' deluges Defendant, I thought an influential intermediary could help. I approached or chose Bell specifically because of the Event report (Exhibit 1), because we are Arizonans, and because obviously Defendant also had connected with Bell. I also correctly perceived Bell as a credible man of integrity who, having promoted the Quest, would worry about Participant deaths and would support its legitimate conclusion.

As I can evidence by my email records, Bell agreed to intermediate, and (UIB) did communicate with Defendant. On follow-up, I was informed that Defendant had tersely thanked Bell. (I assume Defendant refers to this intermediated interaction when he publicly mentioned '2018 communication with the Solver'). Crucially, Defendant's (UIB) cool response initiated material breach, which I naturally *misperceived* as perhaps

1

showing that my Quest solution might be insufficient.  **Because I counted on Defendant's integrity and hoped Bell could stimulate it, Defendant by breach broke good faith with Bell and manipulated me into unwarranted doubt.  Bell has been entirely supportive and helpful toward me.**

Note also that virtually all written work in Exhibits 7 and 8, and most of the mental work, was done in Arizona or while abroad as an Arizona citizen, and was done with a view to impress Bell (or, more precisely, 'Maybe Some Eminent Professional Writer' who **upon Quest solution I chose as Bell due to the connections with Defendant and more that Bell offered, to which Arizona 'nexus' originally established by actions of Defendant toward the Event was fundamental**).

Thus, Bell is central to Defendant's Event attendance, my initial correspondence with Defendant, and the ongoing breach about which I'm Complaining.  **Bell — culturally, an "ultimate Arizonan" — is the linchpin of APJ connections** from Defendant though me back to Defendant.

**(2)** After service on June 4, 2020, Defendant issued notorious press statements ("Late Statements"), notably on or about June 6 and 16, before refusing to interview with Mark Davis of the *Powell Tribune* on June 19, presumably because of negative reaction to the Late Statements or resort to counsel appearing on June 22.

A professional journalist responded openly to the Late Statements in a context germane to APJ.  On June 19, *CBS This Morning* anchor Tony Dokoupil interviewed with *Inside Edition* as shown in *Yahoo! Entertainment* (*Why CBS Anchor Tony Dokoupil Doesn't Think Forrest Fenn's Treasure Was Found*, "Video Interview").  The Video Interview drew on Dokoupil's experience of spending about a week with Defendant preparatory to a *Newsweek* article of August 20, 2012 (Dokoupil, T., "*Forrest Fenn Wants You to Find His Treasure — and His Bones*").

Generally, in the Video Interview, Dokoupil blasted and undermined Defendant, openly doubting the Late Statements.  *Inter alia*, Dokoupil recollected that in 2012 Defendant was "dying for the publicity" [that Dokoupil offered through *Newsweek*] because "no one was paying attention to [Defendant]."  Dokoupil credits himself, probably rightly, with making Defendant a 'big story.'  Given the timing of the *True West* Quest feature of November 2013, the Event of March 2014, and the sequentially cumulative nature of sustained publicity, Dokoupil's  assertion strengthens the Event's APJ significance.  While Dokoupil 'broke the big story,' Bell helped Defendant build it — twice, with a 2013 feature article and the 2014 Event.  Bell then tried to help Defendant resolve in 2018, and that failure is crucial to why we are in Federal court ('the cause of action').

Dokoupil also asserted that "The real reason why I don't think the treasure has really been found is because [Defendant] told me that **his plan was** to entomb himself along with the treasure."  Dead people don't readily entitle contractual consideration.  Though Dokoupil

2

didn't know the Poem is a contract, it certainly is, and his report of that statement shows Defendant openly expressing **preconceived intent to breach.**

By the way, in 2014 an independent journalist quoted Defendant: "It is interesting to know that [many] are out there searching. Many are giving serious thought to the clues in my poem, but only a few are in **tight** focus with **a word** that is key."  That key word is **title** ("tight," "title," and the "turtles" populating Exhibit 7 all match).

**(3) SUMMARY:**

**A) Bell is the linchpin of APJ connections spanning the Quest from publicity to Event to breach, as** *True West* **report of Defendant's Quest and Event attendance was the root of my choosing Bell as intermediary to communicate Quest solution to Defendant, only for breach to result.**

**B) Bell's linchpin status, his Arizona roots and location, and his strongly expressed Arizona identity — as a career — sustain and reinforce, or add depth and connection to, but do not replace, the APJ case articulated in the Complaint.  Also, not Bell or the Event alone, but comprehensive, interlinked contextual totality of Arizona contacts with Bell as pivot, amid decision chains over time and consistent agency or intentionality of actors through to the initial breach underlying the suit, cumulatively indicate APJ.  Defendant does meet the agency, initiation, or voluntary participation threshold with respect to the Arizona character of the contacts in context, and through Bell those do trace, directly and contextually, to the breach causing action by Bell-intermediated communication between litigants.**

**C) The Video Interview reveals Defendant's publicity hunger before linking with Bell and** *True West,* **suggesting staged publicity progress reinforcing Event significance and hence APJ.  Separately, Dokoupil reports intent to breach.  Defendant's actions, or sustained publicity efforts continuing at least through November 2019 and sustained breach beginning by constructively rejecting Bell's 2018 intermediation, still match Dokoupil's statements.**

**D) My understatement of Bell's centrality in the Complaint was a good-faith effort to limit his suit exposure.  My Quest solution is correct on merits, I performed the Quest Contract, and I prefer not to be seen as "using Bell," whom I respect.  Dokoupil interviewed after the Complaint was filed.**

Two more points:

**E) A unilateral contract manifests or operates as, from when, and while offered.  It binds the offeror Defendant, obligating custody of consideration and its delivery on performance, whether or not I, as performer in fact, yet at any point have figured out that a contract binds Defendant or how to act coherently on that realization (because I am not a lawyer, am reluctant to sue, or seek to good-faith connect with**

3

Defendant to collaborate because I don't understand his obstinacy particularly while rescue events, crimes, and deaths continued, much less now that Defendant has publicly professed willingness to conclude the Quest or award the Box without yet actually so doing, at least contractually — and so, here we are in court).

**F) In passing, and for clarity, I want to emphasize that as implied in the first paragraph above, I regard certain of the Late Statements, and their timing and certain others of Defendant's dramatic public actions such as ending the Quest almost immediately after service with this suit, as Defendant publicly admitting that I am the Solver. As Dokoupil implied, the photos Defendant released are demonstrably absurd, as is Defendant's statement that the Solver 'does not want to come forward,' because I am the Solver and hardly could 'come forward' more flagrantly than by suing Defendant. Do inform Defendant that I do come forward, do wish to be identified, and do expect contractual compliance by entitled consideration.**

**(4)** To return to the Judge's order:

Do we agree that your proposed Rule 12 response **"can be avoided,"** because **"the defect that would be the subject of the motion <u>can</u> be cured by filing an amended pleading?"**

Note that I **might** file an amended pleading anyway, with good cause unrelated to the order, **due to Defendant's Late Statements and their repercussions.** In conferential good faith and the spirit of the order, I've revealed much of what such a pleading might contain, and while that document, if ever filed, is only under draft and remains subject to change, I haven't in bad faith omitted anything from conference. If anything I have painstakingly disclosed.

Please also communicate about any other prospective motions that would be subject to the Judge's order so I might similarly address.

Thank you for your patience with this lengthy mail.

Best

On Tue, Jun 23, 2020 at 4:32 PM Brian E. Ditsch <Brian.Ditsch@sackstierney.com> wrote:

> Hello, Mr. Erskine:
>
> You may recognize my name as one of the Arizona attorneys representing Forrest Fenn in the action you have recently filed in this state. Today we received a copy of Judge Tuchi's order concerning motions to dismiss pursuant to Fed. R. Civ. P. 12. We presently expect to file a motion to dismiss the complaint in this case for lack of personal jurisdiction. We do not believe that the court's order is applicable to our anticipated motion because the "defect" that would be the subject of the motion (lack of personal jurisdiction over the defendant) is not one that could be cured

4

with the filing of an amended pleading.   If, however, you believe that the foregoing is incorrect, please let us know your position promptly, and in any event no later than 5:00 p.m. tomorrow (Wednesday, June 24), -- Brian Ditsch, attorney for Forrest Fenn.


Brian E. Ditsch

Attorney
P. 480.425.2636 | F. 480.425.4936

Brian.Ditsch@SacksTierney.com

Sacks Tierney P.A.

4250 N. Drinkwater Blvd., Fourth Floor

Scottsdale, AZ 85251

www.sackstierney.com

a Member of **MERITAS** Law Firms Worldwide

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.