IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Erskine, ) | |
| ) | |
| Plaintiff; ) | |
| v. ) | Case No. CV-20-08123-PCT-JJT |
| ) | |
| Forrest Fenn, ) | Motion for Supplemental Pleading |
| ) | (F. R. C. P. 15(d)) |
| Defendant. ) | |

# **MOTION FOR SUPPLEMENTAL PLEADING PURSUANT TO F. R. C. P. 15(d) AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure ("Rule"), Plaintiff ("I") respectfully Moves the Court to permit, as Noticed, a Supplemental Pleading ("SP") by the Rule's plain language and context. Grounds are set forth herein. Pending Court approval, the SP would be an Exhibit to this Motion, and itself would have Exhibits.

A supplemental pleading "sets forth 'transactions or occurrences or events which have happened since the date of the [prior] pleading'" and where such events have transpired, "Rule 15(d) is used to set forth new facts that update the original pleading or provide the basis for additional relief."[1] Such supplemental pleadings enable courts to award complete relief in one action by avoiding additional costs and delay.[2] Motions to supplement pleadings "are to be 'freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not

---

[1] *United States v. Hicks*, 283 F.3d 380, 385, 386 (D.C. Cir. 2002), quoting Rule 15(d).

[2] *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963).

1

cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'"[3]  Under Rule 15, the burden is generally on the non-moving party to persuade the court "to deny" the motion.[4]

Rule, law, and precedent clearly establish the purpose of a supplemental pleading. The proposed SP's new facts, context, and evidence timely connect with the OC.  The SP would incorporate by reference the whole OC with Affidavit and Exhibits and the whole Responsive Memorandum to the Jurisdiction Motion with Affidavit and Exhibits ("RM"), and terms herein and in the SP have the same meaning as in the OC and RM.  I admit as *pro se* litigant to being unsure whether it is in order to introduce 'SP events' in the RM without first filing the SP, and as a result, make all related filings at once timely to the Court Ordered RM filing deadline while in the alternative respectfully asking the Court for time extension to resolve any such procedural issue that might exist.

Defendant's ("Fenn") Quest Poem expresses in writing an open offer unilateral contract of hidden fact. Precluding hoax and inviting Participation, the contract features: obligor, intent, performance instructions, Box consideration, and means of conveyance ("I give you title"), but conspicuously no means of **redemption** (except 'trust Fenn').

---

[3] *Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006) (quoting *Wright et al., Federal Practice and Procedure*, § 1504, at 186-87); *Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006); *Health Ins. Ass'n of America v. Goddard Claussen Porter Novelli*, 213 F.R.D. 63, 66 (D.D.C. 2003) ("the court should freely grant a party's request to file a supplemental pleading 'when the […] facts connect it to the original pleading'").

[4] *Dove v. Washington Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 88 (D.D.C. 2005).

Fenn commits to entitle the Box to an emergent performing Solver for the act of Location fix, obligating Fenn to Box custody and precluding Box abandonment. Long ago, I evidently performed and Solved. Fenn breaches, passively misrepresenting breach as nonperformance and until Service enjoying fame sponsoring a Quest knowingly misperceived as an 'unsolved' 'scavenger hunt' for an 'abandoned Box.' The crux of breach is that the Quest is Solved, but can't 'resolve.' Semantic evasions aside, Fenn's breach is dull and simple, aiming to defeat contract by petulantly blocking redemption, **pretending breach makes me wrong** — a fact essential to case merits.

New events grounding the SP include Fenn's notorious press statements, press responses to those statements, and repercussions (together, "Late Press") after June 4 service ("Service"). Particularly, Late Press includes Fenn's statements as reported June 7, June 8, and at other dates in major media; Box photo releases on or about June 16, a skeptical response to Fenn by prominent journalist Tony Dokoupil on June 19, other press doubts of Fenn's credibility due to vague Quest 'quasi-resolution,' Fenn's July 22 statement that the Box was 'found' in Wyoming when Box locus or means of custody is irrelevant and only fact of custody and ability to entitle contractually operates, and more as detailed in the SP.

The OC alleges sufficient facts to claim plausible relief. Fenn has known the substance of the OC for a lengthy timespan before Service, as repeatedly informed. Fenn affirmed comfortable prior knowledge by precipitous reactions, including both speed after Service and sensational nature of Late Press, despite the OC's length and intricate

3

detail.  As this Motion's[5] supplemental nature implies, surely no lawyer would have advised Fenn make Late Press statements, likely instead advising quiet and deliberation.

Despite Fenn's evidently confident familiarity with the OC, the SP exposes the sworn Declaration as not leveraging that familiarity, signally failing genuinely to oppose claims or meaningfully to raise material differences of fact.  It fails not by omission, as if Fenn might aim to address case merits later.  It fails, as referenced in the RM, by design of carefully nuanced semantics, purporting or pretending to address case merits under actively weak guise of bogus refutation.  Quest author Fenn's resort to evasive emptiness in a key sworn statement is mystifying.  Such damaging failure exposes Fenn's likely lack of real defense.  Given facts, evidence, context, and events detailed in the SP combined with the meritorious case presented in the OC — bluntly, that I Solved and performed the written contractual Quest — that failure seems fatally irremediable.

The Declaration's pretense to defense also reveals a case idiosyncrasy.  An actual controversy exists, breach evidences, and Fenn's sham denials actively avoid operative merit.  Yet Fenn's curiously insubstantial sworn statements were not made offhandedly.  As the SP shows, Fenn's elaborate semantics required great care and calculated word choices — yet Fenn sustains breach.  Why twist words rather than admit facts?  This disconnect likely stems from Fenn's vulnerable 'folk hero' celebrity and desire for posthumous fame detailed in the RM as relevant to jurisdiction.  Facts of obligated Box

---

[5] "The person who finds the treasure will have **studied the poem over and over**, and thought, and analyzed and **moved with confidence**.  Nothing about it will be accidental." — Fenn; in Jenny Kile interview, February 4, 2013

custody and entitlement by written contract embarrass Fenn.  Publicity, such as for which Fenn accepted award in Arizona from *True West*, motivated myriad people to Participate in a vast, misapprehended scavenger hunt.  Fenn stonewalled Solution, falsely extending the Quest.  The often dodgy Declaration aligns with stonewalling and even cognitive dissonance, avoiding 'unpleasant' reality of Solution as Fenn fears for legacy reputation.

Weak defense and new facts, evidence, and context support supplemental relief aimed at case resolution.  The Late Press 'ended' the Quest, 'revealing' the Box 'found' by an 'anonymous Solver' fixing to 'come forward' — evidently me.  Contractually, the Box best have been 'found' by someone Fenn engaged to prepare it for my entitlement.  I thus demand in the SP that Fenn cure by specific performance of Box entitlement and pay applicable statutory interest.  Performance by Location fix long predates suit.  Aiming to limit confrontation with Fenn, the OC left that relief implied.  The absurdly nebulous, semantically evasive Late Press all but requires explicit new relief demands.  As the SP shows, '**the jig is up**.'  I Solved, already came forward, and reject seemingly being constructively misrepresented.

The SP is Noticed, and I believe is subject only to Court permission.  Fenn would endure no prejudice by SP as Fenn has shown firsthand or prior knowledge of virtually all CSP content.  Also, in conference I disclosed much of the SP's general character in draft form.  Thus, in no plausible aspect would the SP 'surprise' or impose undue burden on Fenn.  Rather, the SP is in order because Fenn 'surprised the world' with Late Press.  Certainly I as valid contractual claimant was particularly surprised and frustrated by Late

Press ambiguity.  If Fenn can come to Tucson for a *True West* Quest publicity award or can make a Declaration marked by inscrutable inanities rather than true defense, why not just honor the written contract, entitling the Box with interest to the Solver in Prescott?

     As detailed herein, to promote efficiency and justice, and with no apparent reason to deny, I request that the Court grant the relief specified in the Proposed Order and permit the Supplemental Pleading.

Respectfully submitted this 26th day of July, 2020.

*[signature]*
_____
Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, July 26, 2020, I caused the foregoing, plus its related Proposed Order, to be electronically filed with the Clerk using the CM/ECF system, which will serve notice of such filing to counsel of record and the Court Monitor to their registered electronic mail addresses:

James W. Armstrong
Brian E. Ditsch
SACKS TIERNEY, P. A.

Karl Sommer
SOMMER KARNES AND ASSOCIATES LLP
*Pro Hac Vice*

*Attorneys for Defendant*

_____
Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com