IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Erskine, ) | |
| ) | Case No. CV-20-08123-PCT-JJT |
| Plaintiff; ) | |
| v. ) | **REPLY MEMORANDUM** |
| ) | **PURSUANT TO PLAINTIFF'S** |
| Forrest Fenn, ) | **MOTION FOR RULE 15(d)** |
| ) | **SUPPLEMENTAL PLEADING** |
| Defendant. ) | |
| ) | |

### REPLY MEMORANDUM TO RESPONSE TO MOTION FOR SUPPLEMENTAL PLEADING PURSUANT TO F. R. C. P. 15(d)

This Memorandum ("Reply") Replies to Defendant's ("Fenn") Response ("Response") (D#26) to Plaintiff's ("I, me, my") Motion for a **proposed** Supplemental Pleading ("SP") (D#22) by Rule 15(d). By LRCiv 7.2(d), "The moving party […] shall have seven (7) days after [response] to [reply]." With this Reply I file Exhibits. I also incorporate by reference all my previous filings including the original Complaint ("OC"), my Responsive Memorandum to the Jurisdiction Motion ("RMJM") (D#21), and the SP Motion, with their Affidavits and Exhibits including terms' meanings; and if permitted, the SP, ready to file **promptly** (I ask three (3) Court days) **on Court approval**.

This Reply addresses or refutes nine (9) Response Statements, summarized as: (a) alleged SP vagueness, (b) not falling within Rule 15(d), and (c) irrelevance to jurisdiction; (d) severe misunderstanding of my clear, consistently summarized case, (e) statements about the Arizona *True West* publicity and Quest combined award Event

1

("Event"), (f) alleged violation of LRCiv 15, (g) alleged cryptic nature of references to SP events including Fenn's press statements after Service and earned press responses and **(h) (pivotally) lack of linkage of the SP and new relief demands to those events**; and (i) my alleged aggravated hostility ("vitriol," etc.) to Fenn.  I aim for clarity in all filings.  This Reply reviews major Rule 15(d) events after Service, some already referenced and Exhibited, and connections key to **merits**, **jurisdiction**, and **new claims**.  It also aims to separate jurisdiction and merits where possible, though Fenn's Declaration and the Response mixed both, requiring my response in kind.

## MEMORANDUM OF POINTS AND AUTHORITIES

1.  <u>Statement (i)</u>: My letter[1] of <u>February 12</u>, during the New Mexico Suit in which I filed to Rule 24 intervene **on Fenn's side** while cross-claiming, exemplifies my respect for Fenn.  Aligning with police, I even criticize Fenn, refuting Declaration Item 12 ("Item #") that my attitude was "ingratiating."  Also, I have made few "inquiries" of Fenn, seldom referencing the Box.  Tragically, Fenn ignored that letter (and more), effectively replying by Threat Letter, so in <u>March</u> as referenced in filings another Participant reportedly died in Dinosaur National Monument.  Only <u>June 4</u> Service motivated Fenn to 'end' the Quest.

Regarding respect for Fenn and Item 1, I worked for about five (5) years in Indochina, living in Saigon and Phnom Penh.  **I learned Vietnamese**, managed private investments and investments for **Cambodia's largest general insurer and unilateral contracts issuer** (car insurance), and supported Cambodia's insurance regulator and a

---

[1] Exhibit SPRY1.  **I welcome discovery of all my communications to Fenn.**

**Laos** insurer acquisition.  I never served in the military.  However, suit aside, no one with my deep involvement in, and love for, Indochina credibly would **disrespect, harass, or aggrieve a decorated Vietnam combat veteran**.  I **thank** Major Fenn for his service.

In the OC I didn't explicitly sue for the Box.  Reluctance to sue and such restraint show calmness and lack of hostility toward Fenn.  However, as detailed herein and given Fenn's press statements after Service, I make **key new relief demands** in the SP.

2.  Statement (f): LRCiv 15 refers to Amended, not Supplemental, Pleadings.

3.  Statement (g): As of **this month**, Fenn's press statements after Service **remain** news for their dubious vagueness.[2]  **Defense lacks excuse for unfamiliarity with Fenn's press statements or their earned responses.**  Defense's strategy seems to be to brush off my case, emulating Fenn in virtually ignoring me and even key case developments, likely as **no genuine or meritorious defense exists.**

To **review**, I sued on May 26 as recorded on May 28 and Served on June 4.  To review major Rule 15(d) events, **often already Exhibited**, reports of Fenn's abrupt Quest 'ending' typically appeared on June 7 or June 8.  Fenn released photos on or near June 16 'confirming' 'outdoor Box find.'  Skeptical reception included *Inside Edition* interview of *CBS This Morning* host Tony Dokoupil ("Tony Interview") on June 19.[3]  On June 22, defense counsel appeared, as did a report in the *Buffalo (Wyo.) Bulletin* that Fenn had declined interview on June 19.  From July 22 reports emerged that Fenn affirmed the Box

---

[2] See Exhibit SPRY2 for August 2 *Albuquerque Journal* editorial.

[3] See Exhibit SPRY3 for transcript authentication of the Exhibited Tony Interview.

was 'found in Wyoming' (by its **custodian** of course) — relevant by **irrelevance** to contract and **not genuinely refuting** ('manipulatively pseudo-refuting') **pinpointed** Colorado Location fix as performance criterion.[4]  These press references are clear and public, not 'cryptic' as defense claims.  Fenn provided a 'gold mine' of SP material.

4.  <u>Statement (d)</u> misapprehends my case.  I respectfully ask the Court not to allow defense to substitute a 'straw-man' case for my real case as presented and evidenced. **'Finding the Box' clearly has nothing to do with performing the unilateral contract expressed in the Poem.  'Finding the Box' is a step toward conveyance,** which is why Fenn abruptly acknowledged 'find' by its Wyoming custodian only after I sued, as Poem author Fenn knows its contractual obligations.  To (again) **summarize**: (a) in <u>2010</u>, Fenn published a Memoir containing a Poem (and in its epilogue, a Drawing) expressing Quest sponsorship with Box as prize; (b) the Poem is a open unilateral written contract[5] of hidden fact by Fenn's design — a Poem that (b.i) Fenn consistently stated was sufficient to earn the Box when correctly decoded and executed, (b.ii) obligates Fenn to Box custody; (b.iii) contains detailed performance instructions for Location fix ending in the Poem's sixteenth (16th) line directing the Participant to "take the chest and go in peace" or, **having performed**, bodily to remove himself[6] to the Location's nearest town of

---

[4]  See Exhibit SPRY6 for <u>July 26</u> *Denver Post* article.

[5]  See Exhibit SPRY4 for *Investopedia*'s definition of unilateral contract.

[6]  See *Merriam-Webster* to confirm the obvious anatomical definition of "chest."  This "chest" cannot be the Box as the Box is not found at the Location.

Ouray (named after the Ute Chief and 'Peacemaker');[7] and (b.iv) despite contractual completeness, lacks redemption provision other than reliance on Fenn; (c) I performed the contract by Location fix, as copiously evidenced, and am due the Box by entitlement.

5.  Statements (b) and (c), arguing SP irrelevance to Rule 15(d) or to jurisdiction, ignore that in the RMJM I already showed how the Tony Interview of June 19 (**before** the Jurisdiction Motion filed) offers key fresh evidence and context for jurisdiction.  To (again) **summarize**: (a) The jurisdiction pivot remains the *True West* combined publicity and Quest award Event and Fenn's travel to Arizona, by lengthy drive for brief stay (showing importance), to attend; (b) Event quantity requires a strong qualitative case for its significance; (c) As detailed in the RMJM Tony made six (6) statements making three (3) key points of breach intent, national publicity value, and Fenn relationship continuity while affording five (5) objective benchmarks showing the *True West* Event as more valuable to Fenn than Tony's breaking national publicity for which Tony said Fenn was "dying;" (d) Tony affirmed that Fenn's main Quest goal was fame.  By Quest nature, this fame clearly aimed to be enduring and posthumous.  Fenn required and cultivated strong, continuous publicity relationships including in Arizona for this goal, and despite ignoring me as affirmed in Item 12, Fenn's response to *True West* Editor and CEO Bob Boze Bell ("Bell") when Bell intermediated Solution showed Fenn's sensitivity to their disruption.

   **Portions** of the Declaration refute **aspects** of my **OC** jurisdiction claims.  But the Tony Interview, a response to Fenn's press statements, provided **new** facts and context fit

---

[7] See Exhibit SPRY5 for credible representations of Ouray and wife Chipeta in this role.

for SP, **upgrading** my jurisdiction case with unchanged theory based on the *True West* Arizona award Event, enabling me to 'drop' an outmoded argument without Amending. **Defense is not prejudiced** given Fenn's firsthand knowledge of press statements of choice triggering Tony's response well after Service but before counsel appeared or the Jurisdiction Motion filed. **Risking *pro se* suit against Fenn, a notorious public figure, paid off when I 'made the iron hot by striking'** — 'ending' the Quest and exposing Fenn's motives, actions, and lameness in suppressing Solution.[8] Fenn's press statements are the kinds of events for which an SP explicitly by Rule 15(d) is permissible, showing why common sense holds that a person served had best **quietly** consult counsel. Tony's skepticism likely partly stems from discomfort — as Bell likely shares — that Tony lent national journalistic credibility to Fenn's dangerous, shady Quest. Had Fenn simply quietly prepared response, Tony surely would not have interviewed.

6.  Statements (a) and (b) that the SP was poorly described or is irrelevant to Rule 15(d), where not addressed *inter alia* or in earlier filings, would be met by **quickly** filing a Court approved SP. The SP details Fenn's press statements, earned responses, contexts, and new but **foreseeable** claims. I believe this relevance is clear and that already I have adequately presented and summarized pertinent matters for the Court and defense.

7.  Statement (e) about the *True West* Event is addressed *inter alia* herein and in filings.

---

[8] "Strike while the iron is hot" first appeared in English in Chaucer's late 14th century *The Tale of Melibeus*, "whil that iren is hoot men scholden smyte." 'Iron'-ically, Franklin upgraded the proverb in 1782, writing to a Rev. Price, "it is not only right to strike while the iron is hot, but that it may be very practicable to heat it by continually striking." Franklin, a **printer** by trade, **referred to publicity**, to using the press to spread ideas.

**8.  Pivotal Statement (h): SP links to Fenn's press statements after Service and more are comprehensive and robust, informing jurisdiction, merits, and relief demands as detailed herein.**  As summarized in the RMJM, in the SP I seek also **thoroughly** to address Declaration Items germane to **merits** but filed with the Jurisdiction Motion.

Fenn's press statements after Service in part concern the Quest 'ending' and the Box being 'found,' thus addressing **redemption** fundamental to contract and suit.  Fact of custody matters, not diversions of Wyoming locus or outdoor means.  The contract omits redemption terms, (a) requiring me to connect with Fenn, a futile effort, (b) fueling Quest **misconception** as **self-redeeming** scavenger hunt also fueling Participation and Fenn's **fame** as the Tony Interview cited, and (c) by misconception, jeopardizing my credibility because **as breach victim** I lack the sensational Box.  As Fenn publicly is prepared to 'relinquish' the Box precipitously upon Service and the Wyoming custodian already 'fetched' the Box, **specific performance of Box conveyance MUST be fit for new SP relief demands**.  Also, Arizona law affords interest on contract judgments.[9]

Speaking of Arizona… …in Response defense oddly cited the "but for" test prong.  As I cited in filings, precedent gives the Court needed **flexibility** in applying the three (3) Ninth Circuit jurisdiction prongs (and their elements) to case facts.[10]  Hence, I cited **facts**

---

[9] A.R.S. §44-1201 (b) plus recent benchmark rates suggests that judgments earn 4.25%.

[10] *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977) and *Lake v. Lake*, 817 F.2d 1416, 1419 (9th Cir. 1987) structure the three-prong test.  For flexibility, see *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002).  For relationships among the prongs, see *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006).

rather than telling the Court how to think, as defense — while misstating key facts in the Response — absurdly attempts.  Prongs are: (a) purposeful availment or direction (Fenn's Bell Event attendance), (b) "but for," or claims **arising out of or relating to** defendant's Arizona-related activities (Fenn's Bell Event attendance and Fenn's response to Solution through Bell, breaching while protecting fame), and (c) reasonableness.

In practice, almost all Ninth Circuit jurisdiction rulings turn on the first prong, and almost none on the second.  Almost any fact pattern passing the first clears the second.[11]  So **permissive** is the Ninth regarding the second prong defense cited aiming to **dismiss by motion** (?!) that the First Circuit, which applies that prong stringently ("proximate cause"), explicitly has **criticized** the Ninth.[12]  Analytically, the Ninth typically folds the second prong into the first.  **In practice, where the Ninth finds purposeful availment, relationship to claims or cause of suit almost always follows.**[13]

Fenn admits undeniable Arizona availment in Item 11, but I relate availment to cause of suit in a **direct** and **necessary** way through redemption fundamental to contract

---

[11] Singleton, P.; *Personal Jurisdiction in the Ninth Circuit*, 59 Hastings L. J. 911 (2008), particularly p. 934.

[12] In *Nowak v. Tak How Invs.*, 94 F.3d 708, 715 (1st Cir., 1996) the Court ruled, "In *Shute v. Carnival Cruise Lines*, the [Ninth] stated that "but for" serves the basic function of relatedness by 'preserv[ing] the essential distinction between general and specific jurisdiction.' 897 F.2d 377, 385 (9th Cir. 1990)."  The First Circuit Court also ruled "[We believe a] **'but for'** requirement […] has in itself no limiting principle; it **literally embraces every event that hindsight can logically identify in the causative chain**."

[13] Even if the Court interprets "but for" against my case, dismissal by motion is unjust. 28 U. S. C. §1631 allows cure by general jurisdiction by case transfer to New Mexico and fits the Note 12 "distinction" expressed in *Shute*.

absent instructions, even if atypically expressed.  Most contracts are dryly bilateral with goal of money.  This contract is **deeply weird**: unilateral and full of intrigue, involving Fenn's goal of fame with consideration Fenn aims to lever for fame by openly offering but really denying even to the performer.  The Tony Interview revealed how Fenn was prepared to "die holding the Box" for fame.  Pursuing fame, Fenn traveled to Arizona for the *True West* Event to accept Bell's award for **creating and publicizing** the Quest.  When Bell sent my **Solution** to Fenn, Fenn **responded to Bell**, confirming breach by ignoring me.  Fenn thus, by differentially communicating, prioritized Bell and publicity over me and performance, putting goal of sustained fame above contract.[14]  Participant misadventure death in <u>March</u> shows Fenn also putting fame above life and public safety.

With performance by Location fix, not Box find, communication with Fenn is sole **redemption** means, **which is — no, really, wait for it — why Fenn stonewalls**.  My reasonable redemption actions pertain to breach as cause of suit.[15]  If my only response from Fenn other than by suit, even indirectly, comes through Fenn's Arizona contacts, and if Fenn consistently by actions prioritizes and values forum contacts above contract, performance, **national** publicity, and public safety, Arizona jurisdiction must apply.

---

[14] **"But for" Bell, how would I have reached Fenn?**  I aim that Bell's testimony and records would enter the case at trial.  As cited in filings, should the Court discern that jurisdiction might turn on trial, defense's Jurisdiction Motion also must fail.

[15] A. R. S. §47-2206 states that "[…] an offer to make a contract shall be construed as inviting acceptance in any [reasonable] manner."  The Court in *K-Line Builders v. First Fed. Sav. & Loan Ass'n, 677 P.2d 1317* (Ariz. Ct. App. 1983) cited a 1975 ruling and Restatement (Second) of Contracts, holding that "[for] contract to exist, there must be an offer, an acceptance, consideration, and sufficient [terms to define] obligations."

The Response also cited Fenn's 'intent.'  Defense semantically seems to insist that Fenn 'intended' a scavenger hunt for an abandoned Box.  Though contrary to contract, I 'agree' that Fenn degenerately 'intended' just that — a widely **misperceived** Quest — because Fenn's goal was fame by sustained subterfuge.  Fenn never 'intended' Solution.  Clearly, Fenn overconfidently 'intending' that unilateral written contract go unperformed, with breach as the 'intended' backup plan, is not the kind of 'intent' that validly defends or releases Fenn from contract.  Plain wording of the fifth (5th) Poem stanza (*inter alia*), including the key word "**must**," affirms Fenn's **imperative contractual intent**.  'Meeting of minds' confirming intent evidences in Solving, in OC Exhibits 3, 4, 5, 7, and 8, as Fenn clearly invested 'mind' in the Quest even while rejecting meeting me in person.

Facts, context, and evidence, with Fenn's bumbling press and nebulous nonsense, show as **plainly daft** that an 'anonymous' Wyoming person is not custodian but 'Solver,' who 'found the Box' 'in early June' 'right when Fenn was Served' so I, the real Solver, am 'just out of luck.'  As Fenn made such statements after Service, an SP is proper to address them in depth.  By shell-gaming custodian for Solver, Fenn invokes 'Murphy's Law.'  I seek protection of real law.  As months pass unresolved, it's clear that **Fenn lacks meritorious defense**.  The American Bar Association webpage "How Courts Work" states that most civil cases settle.  I welcome trial and discovery, but for efficient justice, even provisional Arizona jurisdiction pending trial might motivate hapless defense to settle rather than face Bell and a New Mexico State Police major, plus eventual press exposure, while the Quest remains 'curiously unresolved' for more months.

**CONCLUSION**

Filings show litigants with contrasting approaches. I offer abundant facts, context, and evidence, explain painstakingly and transparently, present options for the Court, and am eager for merits. Defense ignores merits, distorts my case, and railroads the Court to extremes, aligning with breach, Item 12 stonewalling, and Declaration semantics.

**With feeling that I'm off to sue / the Wizard / the Wonderful Wizard of Oz…** Rule 15(d) reads: "On motion and reasonable notice, the court may, on just terms, permit […] supplemental pleading setting out any […] event that happened after the date of the pleading […] though the original pleading is defective […]" Case events, cited in filings and herein, plainly fit. Fenn, a public figure, chose to make definitive public statements quickly after mere Service, limiting options and drawing derisive public skepticism. I showed how Fenn's statements and earned responses drive jurisdiction, merits, and new relief contexts. **I respectfully ask the Court to grant my Motion for a Supplemental Pleading** so I might please **quickly complete** presentation of my meritorious case.

Respectfully submitted this 17th day of August, 2020.

_/s/ Brian Erskine_

Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

# EXHIBIT LIST

1. Plaintiff Letter to Fenn, February 12

2. *Albuquerque Journal* editorial, August 2

3. Tony Interview transcript authentication

4. *Investopedia* unilateral contract definition

5. Chief Ouray and Chipeta, 'Peacemakers,' illustrated

6. *Denver Post* article, July 26

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I caused the foregoing, with Exhibits and along with a Letter to Chambers, to be electronically filed with the Clerk using the CM/ECF system, which will serve notice of such filing to counsel of record and the Court Monitor to their registered electronic mail addresses:

James W. Armstrong
Brian E. Ditsch
SACKS TIERNEY, P. A.

Karl Sommer
SOMMER KARNES AND ASSOCIATES LLP
*Pro Hac Vice*

*Attorneys for Defendant*

_____
Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com