1338 Sabatina Street<br>
Prescott, Arizona 86301-7402

August 17, 2020

[3 pp.]

The Honorable Judge John J. Tuchi
U. S. District Court for the District of Arizona
401 West Washington Street, Suite 130, SPC 1
Phoenix, Arizona 85003-2118

Dear Judge Tuchi:

    While waiting for Fenn to admit that I Solved the Quest, I aim to resolve this case efficiently.  First, I welcome conference.  Second, I am available for defense deposition, whose filings show poor grasp of how the Quest works.  Third, I know that no genuine defense exists.  Fenn is familiar with my claims and 'ended' the Quest right after Service knowing their truth, leaving only fact of breach in meaningful dispute.  This case is a paper chase.  Happy also to listen, I outline a settlement proposal below, inviting Fenn to cure breach — and, to quote the retired New Mexico State Police chief, finally to "stop this nonsense."

    To review, Fenn sponsored a notorious 'hidden treasure' or Box Quest for public Participation.  Fenn introduced the Quest in a <u>2010</u> Memoir containing a short Poem with sufficient performance instructions in the form of an open unilateral reward contract.  The Poem's last line denotes Box conveyance by entitlement, obligating Fenn to Box custody, excluding abandonment.  I show performance by Location fix clearly and convincingly.  On Service, Fenn had the 'anonymous' Box custodian, who apparently is in Wyoming, retrieve the Box.  The custodian understandably might not want his good name near this case, just as journalists who once helped Fenn publicize the Quest now express doubts.

    A 'con artist' tricks others for gain by persuading them of something other than the truth.  The Quest blurs the boundary between challenge and swindle, or truth and con.  Already wealthy, for Fenn the 'name of the gain' is what Irene Cara sang about in 1980: **fame**.  The Poem has contractual form and intent, but the Quest manipulatively requires that Participants foreseeably misperceive it as a scavenger hunt for an abandoned Box.  With Fenn obligated to Box custody, this contagious misperception guarantees mass futility — and unacceptably, occasional fatality.  The Quest is not a hoax, fraud, lie, or 'bad faith act.'  Fenn intended no real harm, but aimed for posthumous fame.  Fenn likely is unhappy the Quest was Solved and is pained by exposure, which is regrettable.

*Case No*. *CV-20-08123-PCT-JJT*                    *Service / cc: Defense Counsel through CM/ECF*

Simply put, this contracts case exists because Fenn **doesn't wish** to comply. Absent redemption terms reflect Fenn's false confidence that the Quest never would be Solved. Fenn's press statements palpably are, and are publicly exposed as, inconclusive, incredible, and evasive. Quest and breach also drove public safety dangers as police cited, including at least five reported deaths, most culpably in <u>March</u>. Recurring deaths and rescues showed the democratic Quest's indefinite potential to drive both harm and headlines stoking Fenn's fame, or infamy. The <u>March</u> death, well after Fenn knew I Solved and soon after the Threat Letter, shows Fenn's indifference to harm despite lack of intent to harm. I did not consent to watch Participants die seeking a Box contractually mandated to be in Fenn's custody. I'm no hero, but my suit saved lives.

Available 'defenses' are to deny contract, deny performance, block fulfillment, or stall hoping the *pro se* litigant flops. Defenses must align with Declaration and press statements. Denying contract is absurd. Fenn's press statements 'ending' the Quest afford only one way to deny performance: pretending that the Wyoming custodian coincidentally Solved by abandoned Box find. Fatally, that implausible defense would violate contract and fail in other ways. Other strategies impede justice and waste time.

**The jig is up**. Fenn is a master of calculated false impressions by degenerately true statements, but written contracts are worthless if an obligated celebrity party can opt by semantics to renege when a weaker party performs. At trial I would call both a New Mexico State Police major and *True West* CEO and Editor Bob Boze Bell.

With confidence on the merits, I welcome conference at the Court's convenience. My settlement proposal is simple: Fenn must entitle the Box — this is not negotiable — but with the Box I would accept a fraction of interest due by applicable statute, resolving the case now. I would aim to sell the Box **whole** to an institutional conservator, a museum or university, ideally for curated display in Prescott, and also would support conservation and write for publication. *True West* is right that Quest and Box are part of Western heritage. Originally, as I can evidence, I aimed for public safety, not the Box or fame. For whatever it's worth to Fenn, I've shown integrity, grit, character, and skill. The Quest required those traits to Solve, and without Fenn's amazing art and work, what would I have Solved? Fenn — happy 90th birthday soon — can trust me with its legacy.

Respectfully,

*[signature: Brian Erskine]*

Brian Erskine
Plaintiff
(949) 424-4294
kattigara@gmail.com

*Case No. CV-20-08123-PCT-JJT*               *Service / cc: Defense Counsel through CM/ECF*

**Appendix: Settlement Proposal Draft Outline**

1. Fenn to comply with contract and entitle Box with contents including manuscript and any other Quest benefits to me

2. Fenn also to pay me negotiated cash sum in lieu of interest

3. I commit to secrecy of Custodian's identity

4. **I commit to respecting Fenn and upholding Fenn's legacy, making every good-faith effort (which surely will succeed) to sell the Box and contents whole to a professional institutional conservator, such as a museum or university, in the United States, for permanent public exhibition and enjoyment**

5. Details of settlement to be undisclosed (obviously, fact of settlement is disclosed)

6. Whole and entire settlement, mutual relinquishment of other claims