James W. Armstrong (No. 009599)
james.armstrong@sackstierney.com
Brian E. Ditsch (No. 009075)
brian.ditsch@sackstierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., Fourth Floor
Scottsdale, Arizona  85251-3693
Telephone: (480) 425-2600

Karl H. Sommer (admitted pro hac vice)
karls@sommerkarnes.com
SOMMER KARNES & ASSOCIATES
125 Lincoln Ave, Suite 221
Santa Fe, New Mexico  87501
Telephone: (505) 989-3800

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Erskine,<br><br>                    Plaintiff,<br><br>        v.<br><br>Forrest Fenn,<br><br>                    Defendant. | No. 3:20-CV-08123-PCT-JJT<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>(Oral Argument Requested) |

On June 25, 2020, Defendant Forrest Fenn filed a Motion to Dismiss Plaintiff Brian Erskine's Complaint in this matter due to the absence of personal jurisdiction.  [Doc 15] The Complaint alleges that Mr. Fenn breached a "unilateral contract" by authoring a memoir entitled *The Thrill of the Chase* (the "Memoir") which  included a poem containing clues to a treasure chest hidden by Mr. Fenn in the Rocky Mountains (the "Chest") which Mr. Erskine purportedly "solved."  More specifically, Mr. Erskine, a resident of Prescott, alleges that he ascertained the location of that Chest (without actually finding and retrieving it) somewhere between Silverton and Ouray, Colorado, and that he "performed" the contract by photographing a landscape in August 2018 purportedly matching an illustration in Mr. Fenn's Memoir. Mr. Erskine further alleges that soon afterward, he

informed Mr. Fenn of the "solution" of the Memoir's "puzzle," and that Mr. Fenn breached their contract when his attorney later wrote Mr. Erskine to explain that ownership of the treasure Chest could only be attained by actually finding the Chest in the location Mr. Fenn hid it over ten years earlier -- not by allegedly "solving" or "decoding" the poem in Mr. Fenn's Memoir.[1]

The Complaint also included an Attachment entitled "Jurisdiction and Venue," in which Mr. Erskine alleges that this Court may exercise "specific personal jurisdiction" over Mr. Fenn -- a 48-year continuous resident of Santa Fe, Mexico -- based solely upon Mr. Fenn's one-day visit to Tucson in March 2014 to accept *True West* magazine's annual "True Westerner Award" in recognition for his contribution to and preservation of America's Western heritage.  In his Motion to Dismiss, Mr. Fenn contended that neither general nor specific personal jurisdiction could be constitutionally asserted in Arizona given the absence of any meaningful minimum contacts between Mr. Fenn and this State, particularly since Mr. Fenn's brief trip to Tucson in 2014 had no relationship to the alleged creation, performance, or breach of the purported "unilateral contract" between the parties in 2018.

Indeed, in support of his Motion to Dismiss, Mr. Fenn submitted a Declaration [Doc 15-1] explaining that he had no affiliation with *True West* and did not seek out, apply for, or otherwise solicit the Award he was given.  The Declaration further explained that Mr. Fenn has never met Mr. Erskine nor entered into any contract with him (or anyone else) concerning the Chest or its discovery.  That Declaration and the Supplemental Declaration attached hereto likewise makes clear that Mr. Fenn's Memoir was not intended as an offer to reward anyone who simply claimed to have solved the location of the Chest without physically recovering it.  Instead, after being diagnosed with cancer in 1998, Mr. Fenn was inspired to hide the Chest with the purpose of creating a public search for it and, in the words of the Memoir's poem, anyone who found it could "Just take the chest and go in

---

[1] Counsel's letter to Mr. Erskine further explained that "Mr. Fenn has never been to and is entirely unfamiliar with the location in Colorado that you identify in your 'solve.'" Complaint, Ex. 11.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

peace."  Moreover, that is precisely what happened in early June 2020, when the Chest was found by a searcher (who has requested anonymity) in Wyoming, nowhere near the Colorado location Mr. Erskine asserts that the clues of the poem lead.

In his Response [Doc 21] to the Motion to Dismiss, Mr. Erskine does not contest that general jurisdiction does not exist over Mr. Fenn in Arizona, nor does Mr. Erskine challenge the settled proposition that he bears the burden of establishing that the exercise of specific personal jurisdiction meets all constitutional standards by coming forward with affidavits and other competent evidence of the facts necessary to do so (rather than simply relying upon the unverified allegations of his Complaint).  *See* Motion at 4.  The lone Affidavit [Doc 21-1] submitted by Mr. Erskine himself, however, plainly fails to satisfy those standards.

## I.      THERE IS NO SPECIFIC PERSONAL JURISDICTION OVER MR. FENN

As discussed in Part C of Mr. Fenn's Motion, to establish specific jurisdiction consistent with Due Process, Mr. Erskine must demonstrate that (i) Mr. Fenn purposefully directed his activities or engaged in some form of affirmative conduct to allow or promote the transaction of business within Arizona, thereby purposefully availing himself of the privileges and benefits of Arizona law,[2] and (ii) Mr. Erskine's claim arose out of or was directly related to Mr. Fenn's forum directed conduct.[3]  Only if both of these prongs are satisfied does the burden shift to Mr. Fenn to demonstrate that the exercise of jurisdiction would not be reasonable.  *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008).

The primary focus of Mr. Erskine's Affidavit and Response is his claim that after having no success with Mr. Fenn in "redeeming" Mr. Erskine's purported solution of the "Quest" for the Chest's location, Mr. Erskine (apparently based on the "publicity" generated

---

[2] *See Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012); *Doe v. American Nat'l Red Cross,* 112 F.3d 1048, 1051 (9th Cir. 1997); *Chandler v. Roy,* 985 F.Supp. 1205, 1211-12 (D.Ariz. 1997).

[3] *See Menkin v. Emm,* 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff must show that he would not have suffered an injury "but for" the defendant's forum related conduct).

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

by the "True Westerner Award" event in 2014) turned to the Editor of *True West* magazine, Bob Boze Bell, to act as a "conduit" or "intermediary":

> Through Event publicity, I won informal support from Bell in Bell's agreement to communicate Solution to Fenn. Fenn replied to Bell, but did not cure. Thus Fenn perversely ignores the Solver but prioritizes Bell, favoring both fame and Arizona jurisdiction. Clearly, such jurisdiction stems from Fenn's travel to Arizona to accept Bell's publicity award for a contractual Quest with a devious redemption gap borne of breach intent, affirmed by actual breach by stonewalling me as Solver, leaving me scant means to redemption but to leverage the award-winning Arizona publicity to try to reach Fenn through Bell, or sue.

Response at 4; *see also* Erskine Affidavit, ¶¶ 5-7.

The purposeful availment prong of the test for specific jurisdiction, however, obviously cannot be satisfied by Mr. Erskine's unilateral decision to ask Mr. Bell to communicate with Mr. Fenn concerning the purported "Quest Solution" because those actions ***by Mr. Erskine*** do not involve any affirmative conduct ***by Mr. Fenn*** to direct his activities into Arizona.[4]  Moreover, contrary to Mr. Erskine's characterization of Mr. Bell's involvement as "informal support" and a "validat[ion]" of "my Solution," the lone email exchange between Mr. Bell and Mr. Fenn about Mr. Erskine in February 2020 instead demonstrates that Mr. Bell was, at best, annoyed (if not threatened) by Mr. Erskine's "obsession" with the treasure and his repeated implications "that we, *True West*, are responsible because we promoted [Mr. Fenn]." Fenn Supp. Declaration, ¶24.  Indeed, in his final email to Mr Fenn, Mr. Bell states in apparent frustration that "I need to have him [Erskine] cease and desist, at least for my part." *Id.*

Mr. Erskine's similarly nonsensical speculation concerning Mr. Fenn's purported "craving" to establish a "publicity relationship" with *True West* in Arizona is not only wholly unsupported, but also directly contrary to Mr. Fenn's testimony that he never solicited media coverage to discuss the Memoir (which he also never sold, distributed,

---

[4] Just as spurious for jurisdictional purposes is Mr. Erskine's reliance upon his equally unilateral decision to travel to New Mexico in August 2018 to (inexplicably) present his "Quest solution" to a local state police officer.  Erskine Affidavit, ¶11.

advertised, or received any profits) and did not in any way seek out the "True Westerner Award" Mr. Fenn was presented in 2014 (despite Mr. Erskine's bizarre conjecture that the length of Mr. Fenn's drive to Tucson and brief stay to accept that Award "show Event importance and Fenn's purposefulness"). Likewise irrelevant are the various media articles from the Internet attached as exhibits to Mr. Erskine's Response and Complaint, all of which lack foundation and constitute inadmissible hearsay (or double hearsay) as to the truth of their contents, which in any event in no way support Mr. Erskine's convoluted allegations of breach of contract and specific jurisdiction.  *See Twentieth Century Fox Film Corp. v. Entertainment Distrib.,* 429 F.3d 869, 880 (9th Cir. 2005); *Larez v. City of Los Angeles,* 946 F.2d 630, 642 (9th Cir. 1991); *AFMS LLC v. United Parcel serv. Co.,* 105 F.Supp.3d 1061, 1070 (C.D.Cal. 2015), *aff'd,* 696 F.App'x 85 (2017); *Combs v. Washington State,* No. C12-5280, 2014 WL 4293960, at *2 (W.D.Wash. Aug. 29, 2014), *aff'd,* 660 F.App'x 515 (9th Cir. 2016); *Green v. Maricopa Cty. Cmty. Coll. Sch. Dist.,* 265 F.Supp.2d 1110, 1134 (D.Ariz. 2003).

Mr. Erskine's further reliance upon his purported transcription of an interview with CBS reporter Tony Dokoupil on June 19, 2020 is also inadmissible on the same grounds. Moreover, even if taken at face value, Mr. Dokoupil's opinions on (i) Mr. Fenn's purported desire for national publicity and enduring fame and (ii) his belief that the Chest was not actually found in Wyoming on June 5 are likewise entirely speculative, ridiculously sensational, and factually unsupported. Even more preposterous is Mr. Erskine's bald conjecture that Mr. Fenn fabricated the discovery of the Chest by another searcher in Wyoming and "'ended' the long-solved Quest" solely in response to the service of Mr. Erskine's Arizona District Court Complaint one day earlier.  *See* Response at 12; *but see* Fenn Supp. Declaration, ¶18.

In sum, Mr. Erskine has fallen far short of meeting his evidentiary burden of establishing the first prong of the test for specific jurisdiction.  Mr. Erskine's failure to establish the second prong of the specific jurisdiction test is even more clearcut.  According to his own "Helpful Timeline," Mr. Erskine alleges that he "learned of the Quest living and

working in Cambodia in 2016" and "solved" it "by Location fix in August 2018," only to have Mr. Fenn "sustain" his breach and "confirm" Mr. Erskine's cause of action in connection with Mr. Bell's subsequent "intermediation."  Response at 11-12.  None of these purported events, however, have any relationship to the alleged forum related activities relied upon by Mr. Erskine, including (i) Mr. Fenn's alleged efforts to cultivate national and regional publicity for the "Quest" through his August 2012 *Newsweek* interview with Mr. Dokoupil, a *True West* article about Mr. Fenn in November 2013, and the "True Westerner Award" event in March 2014, and (ii) Mr. Erskine's ***unilateral*** outreach to Mr. Bell to seek his help in convincing Mr. Fenn to reconsider his alleged prior breach of their "unilateral contract" by refusing to acknowledge Mr. Erskine as the "Solver" of the "Quest."

Simply stated, Mr. Erskine's cause of action did not arise out of these purportedly "purposeful" forum state contacts on the part of Mr. Fenn, *see Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987), nor has Mr. Erskine shown that he would not have suffered an injury "but for" that allegedly forum related conduct.  *See Menken,* 503 F.3d at 1058; *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1075 (9th Cir. 2001).  Indeed, all aspects of Mr. Erkine's alleged contract claim -- how he learned about the Memoir in Cambodia and its purported unilateral contract offer, his "performance" of that contract by "fixing" the alleged location of the Chest in Colorado, and Mr. Fenn's "breach" by failing to "redeem" the Chest in New Mexico -- took place outside Arizona.  The only link to this State -- Mr. Erskine's present residence in Prescott -- cannot serve as the basis for jurisdiction.  *Walden v. Fiore,* 134 S.Ct. 1115, 1122 (2014); *see also Boschetto,* 539 F.3d at 1017 (forum state plaintiff's alleged "formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction") (following *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)).

Given Mr. Erskine's failure to meet his burden of establishing either of the first two prongs of the test for specific jurisdiction, it is not necessary to reach the third prong concerning whether the exercise of jurisdiction over Mr. Fenn in Arizona would be

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

reasonable. *Boschetto,* 539 F.3d at 1016. In his Response, however, Mr. Erskine does not contest the arguments and evidence presented in Mr. Fenn's Motion to Dismiss supporting the unreasonableness of such an exercise of the Court's power, most notably the hardship that would be imposed upon Mr. Fenn and his family in light of the very poor health of Mr. Fenn's 87-year-old wife in Santa Fe, for whom Mr. Fenn (himself almost 90) and his daughters act as primary caregivers. *See* Motion at 9-10. All three constitutional requirements for the assertion of specific personal jurisdiction have therefore plainly not been met in this case.

## II.    TRANSFER OF THIS CASE TO THE DISTRICT OF NEW MEXICO IS NOT WARRANTED

Lastly, Mr. Erskine requests that if the Court agrees that personal jurisdiction does not exist in this case, his lawsuit be transferred to the District of New Mexico under 28 U.S.C. § 1631, rather than be dismissed. Section 1631 provides, in pertinent part, that: "Whenever a civil action is filed in a court … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action … to any other such court … in which the action … could have been brought at the time it was filed … ." As explained in WRIGHT & MILLER, however:

> The statue's reference to "want of jurisdiction" is unspecific. All courts agree that it applies to a lack of subject matter jurisdiction. The courts split, however, on whether it also applies to permit transfer to cure a lack of other court-access problems, primarily personal jurisdiction. Many courts relying principally on legislative history, conclude that transfer under Section 1631 is appropriate only when the original court lacks subject matter jurisdiction. Many other courts, however, have taken the broader view … . In extending Section 1631 to apply to lack of personal jurisdiction, this latter group of courts relies on the statutory text -- referring only to "jurisdiction" -- and not on the congressional purpose underlying its passage. ***[5]

---

[5] The lone decision cited by Mr. Erskine, *Federal Home Loan Bank of Boston v. Moody's Corp.,* 821 F.3d 102 (1st Cir. 2016), *abrogated by Lightfoot v. Cendant Mortg. Corp.,* 137 S.Ct. 553 (2017), falls within the latter group of cases favoring a simple text-based view of the statute. Issued by the First Circuit, that decision is of course nonbinding upon this Court and the Ninth Circuit.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Although the courts are rather evenly divided on the subject, ***the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue***.  The textual argument for extending Section 1631 to situations in which a court lacks personal jurisdiction is certainly strong.  Black's Law Dictionary defines "want of jurisdiction" to include a lack of either subject matter or personal jurisdiction.  But in construing the statute, this wording is best seen a case of clumsy drafting.  The statute's legislative history … is quite clear that Section 1631 was intended only to apply to situations in which a court lacked subject matter jurisdiction.

[Moreover], [t]he context of the Federal Courts Improvement Act of 1982, of which Section 1631 was part, supports this interpretation. ***

15 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3842 (4th ed. 2020) (emphasis added).

"There is little citable Ninth Circuit authority addressing the question of Section 1631's applicability to issues of personal jurisdiction." *Allen v. Conagra Foods, Inc.,* No. 3:13-cv-01279, 2019 WL 5191009, at *3 (N.D. Cal. Oct. 15, 2019) (citing *Quicksilver Air, Inc. v. Helicopter Engine Repair Overhaul Servs., Inc.* No. 3:12-cv-06, 2013 WL 12122582, at *6 (D. Idaho Jan. 18, 2013)).  Instead, "[p]ublished Ninth Circuit authority suggests that the statute is limited to subject matter jurisdiction." *Id.* (citing *Kolek v. Engen,* 869 F.2d 1281, 1284 (9th Cir. 1989) ("Section 1631 authorizes federal courts to transfer appeals in civil actions in order to cure a lack of subject matter or appellate jurisdiction."), and *Gherebi v. Bush,* 352 F.3d 1278, 1302 n.30 (9th Cir. 2003) ("§ 1631 relates to subject matter jurisdiction")).  Thus, as discussed in *Quicksilver*, "[w]hile the Circuit's position on this issue is not entirely clear, the Circuit generally agrees with the Wright and Miller treatise on a broad array of issues, leading the Court to conclude that it would agree on this issue as well."  2013 WL 12122582, at *6, *followed in Allen*, 2019 WL 5191009, at *3.  Section 1631 should likewise not be applied here.

Even if transfer under Section 1631 is not properly limited to cases lacking subject matter jurisdiction, the statute further requires that such a transfer be in the "interest of justice," which "ordinarily will be satisfied if the statute of limitations has expired

subsequent to the time of the original filing, so that transfer, rather than dismissal, will preserve the plaintiff's cause of action."  17 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 111.52 (3d ed. 2020).  Conversely,

> courts will deny transfer under Section 1631 if the case is a "sure loser" in the court that has jurisdiction.  In these cases, the court determining the motion to transfer should dismiss the case rather than grant a motion to transfer.  Although the motion to transfer is predicated on the district court's lack of subject matter jurisdiction over the case, Section 1631 confers on the district court jurisdiction to engage in a limited review of the merits *** to avoid wasting the time of the court with jurisdiction.

*Id.*  (citing *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999) ("there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed," permitting the court to "take a peek at the merits"); *see also Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) (transfer under § 1631 is "improper where the plaintiff fails to make a *prima facie* showing of a right to relief, because the interests of justice would not be served by transfer of such a case").  In other words, "[w]here no colorable claim for relief has been shown, transfer is improper."  *Clark,* 959 F.2d at 814 (citations omitted).

Here, based upon the alleged 2018 performance and breach of Mr. Fenn's purported "unilateral contract" with Mr. Erskine, there appears to be no limitations obstacle to refiling Mr. Erskine's lawsuit in New Mexico, should he decide to do so.  There is similarly no "interest of justice" favoring a transfer of this case over dismissal, given the clear absence of any colorable claim for relief.

Indeed, the linchpin of Mr. Erskine's breach of contract claim is that the terms of the "offer" contained in the Memoir only required the "solver" to correctly decipher the clues of Mr. Fenn's poem and identify the location of the hidden Chest, without any need to actually retrieve or take possession of the Chest in order to become entitled to the treasure. As made absolutely clear by the fourth stanza of the poem ("Just take the chest and go in peace") and Mr. Fenn's uncontradicted testimony, however, finding and taking physical possession of the Chest were both necessary for the searcher to keep it.  Fenn Declaration, ¶14; Fenn Supp. Declaration, ¶¶6, 15-16.  Moreover, from the very first day of the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Memoir's release, Mr. Fenn's public statements and interviews have consistently confirmed that the first person to follow the poem's clues to find the Chest's hidden location and then physically take possession of the Chest "can have it."  Fenn Supp. Declaration, ¶¶9-13.

Mr. Erskine was not that person, *see* Fenn Supp. Declaration, ¶¶7, 16-18, 20-21, and he freely admits that he neither found the actual Chest nor took physical possession of it, but instead merely claims to have (incorrectly) determined that the clues of the poem lead to a location in Colorado (that Mr. Fenn has never visited), rather than the place Mr. Fenn actually hid the Chest (and where it was recently found) hundreds of miles away in Wyoming.  A more frivolous cause of action is hard to imagine, and this Court should not further waste the time and resources of the District Court of New Mexico by transferring Mr. Erskine's folly under Section 1631.

For all of the reasons discussed above and in his June 25 Motion to Dismiss, Mr. Fenn therefore respectfully requests that Mr. Erskine's Complaint be dismissed for lack of personal jurisdiction, and that Mr. Fenn be awarded his reasonable attorneys' fees under A.R.S. § 12-341.01.[6]

DATED this 24th day of August, 2020.

SACKS TIERNEY P.A.

By: */s/James W. Armstrong*
    James W. Armstrong
    Brian E. Ditsch

SOMMER KARNES & ASSOCIATES

By: */s/Karl H. Sommer*
    Karl H. Sommer

*Attorneys for Defendant*

---

[6] As with the other legal issues identified above, Mr. Erskine has not contested that Mr. Fenn plainly qualifies for such an award of fees under the statute and the decision in *Balestrieri v. Balestrieri,* 212 Ariz. 25, 28, ¶10 (App. 2013).

1

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:


Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301
*Plaintiff pro se*


                                        */s/ Toni Cooper*

[2802425]

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693