# EXHIBIT 3

## James W. Armstrong

| | |
|---|---|
| **From:** | Brian Erskine <kattigara@gmail.com> |
| **Sent:** | Sunday, September 20, 2020 11:19 PM |
| **To:** | James W. Armstrong |
| **Cc:** | Brian E. Ditsch; Karl H. Sommer |
| **Subject:** | Re: Conference email / Fenn case / Envisaged FRCP 25(a)(1) Motion ++ |

Hi James,

Your stipulation proposal is noted, and is clear.  As of now, I yet have <u>no response either way</u>, and will take it under consideration.

The condolence card was exactly that, did not mention any legal matters or anything related to any aspect of their subject matter (treasure, Quest, etc.), said only kind words, and had only its plain and human purpose.

In my legal strategy there is no need for surprise.  I did not naively expect legal advice from opposing counsel, but my transparency does my case no harm.  Disclosure is my friend here.

Thank you

Brian


On Thu, Sep 17, 2020 at 2:30 PM James W. Armstrong <James.Armstrong@sackstierney.com> wrote:

> Mr. Erskine, the opening of Mr. Fenn's probate estate in New Mexico is underway, a process that we estimate may take up to 30 days.  Once the estate is opened and the personal representatives are appointed, we are willing to stipulate to the substitution of the estate for Mr. Fenn as the Defendant in your lawsuit under Rule 25(a).  Please let me know if that procedure is acceptable to you.
>
>
> With regard to the remainder of your email, I am not your attorney and neither are Mr. Sommer and Mr. Ditsch.  We accordingly have no comment on your legal analysis and strategy.  We do ask, however, that you immediately refrain from any further efforts to directly communicate with Mrs. Fenn, particularly given your apparent (ill-conceived) desire to commence a lawsuit against her.
>
>
> James W. Armstrong
>
> Attorney
> P. 480.425.2628 | F. 480.425.4928

1

James.Armstrong@SacksTierney.com

# SacksTierney P.A.
ATTORNEYS

Sacks Tierney P.A.

4250 N. Drinkwater Blvd., Fourth Floor

Scottsdale, AZ 85251

www.sackstierney.com

a Member of **MERITAS** Law Firms Worldwide

**From:** Brian Erskine <kattigara@gmail.com>
**Sent:** Monday, September 14, 2020 10:28 AM
**To:** James W. Armstrong <James.Armstrong@SacksTierney.com>
**Cc:** Brian E. Ditsch <Brian.Ditsch@Sackstierney.com>; Karl H. Sommer <karls@sommerkarnes.com>
**Subject:** Conference email / Fenn case / Envisaged FRCP 25(a)(1) Motion ++

Hi James,

This morning I mailed Peggy a brief, warmly courteous condolence card.

The purpose of this mail is conference, before filing a Motion to Substitute Party Defendant under Rule 25(a)(1) and with 120 hours having passed since the Suggestion of Death, thus covering unlikely intestacy. I invite conference about any or all of the below:

1. **N. M. LAW:** My understanding is that N. M. law applies in this context regardless of jurisdiction, though Ariz. law is similar in all pertinent aspects.
2. **CLAIM SURVIVAL:** My claim survives by N. M. law (Stat. 37-2-4).
3. **COMMUNITY PROPERTY / PEGGY FENN:** N. M. like Ariz. is a community property state (Stat. 40-3-12). Given the 66 year marriage, Santa Fe residency from 1972, the time of the Fenn gallery opening, and the 2010 Poem or Quest contract publication, the attached

2

*People* Magazine article from 1986 clearly shows Fenn wealth accumulation in vigorous, notorious progress. I presume, as entitled by N. M. law, that the Box and Poem obligation devolve on spouse **Peggy Fenn** (hence, she would be the "new" Defendant). While I am aware of her distaste for the Quest and while I take no pleasure in suing a bereaved widow, the law of community property is clear and known. I would hope doing so would empower Peggy to resolve. I also am aware I must serve Peggy, as an individual, per Rule 25(a)(3) and its referent Rules. Particularly if you or Karl has pertinent clear and convincing proof of transmutation of community property, please inform.

4. GOLD CLAUSE 1: Given events after Service clearly proving the Box is real and (as I argue) in custodial hands, the need to file a party substitution motion anyway, and a good-faith aim to inform Peggy as likely new Defendant and to illuminate the case path, I will include in the 25(a)(1) Motion a brief case resolution or follow-through plan, or a kind of preview of a key aspect of my (yet to be Court approved) Rule 15(d) Supplemental Pleading. I already claim the Poem is a performed contract with conveyance term "I give you title to the gold." **That is a gold clause.** See 31 U. S. C. 5118 and *216 Jamaica Avenue, LLC v. S&R Playhouse Realty Co., 540 F.3d 433* (6th Cir. 2008) (also citing 9th Cir. precedent) for enforceability of gold clauses by specific performance by the letter of Federal law. I also attach a one-page screenshot from Milton Friedman's seminal *A Monetary History of the United States, 1867-1960*. See also https://www.cooperkirk.com/gold-clause/ and https://www.cooperkirk.com/lawyers/david-h-thompson/ - he's not my lawyer, but practices in the gold clause area of law, which shows it's a real, if niche, practice. Typically gold clauses bind, in a modern context, in novated contracts dating to the gold era before 1933 (such as 99-year leases), but the 2010 Poem is a (very rare) "new" gold clause contract. Since 1977, 31 U. S. C. 5118 gives the "new" Poem the same explicit enforceability as novations (dating to 1912, for example, such as in *216 Jamaica Avenue*). I believe that between 1933 and 1977 all gold clauses were liquidated to dollars (gold clauses were not deleted, voided, or outlawed, only disabled or rendered unenforceable in specific gold delivery terms and converted to a currency obligation only, to match F. D. R.'s gold

3

demonetization). I'm aware that Box contents are not 100% fine gold, but clearly the majority is gold and the non-gold content is part and parcel, inseparable physically and conceptually from the whole visibly gold-based Box (see Fenn's photo from 16 June). The gold clause and its applicable Federal law gives me a powerful statutory lever to overcome any (hypothetical) Court reluctance to order specific performance.

5. GOLD CLAUSE 2: Tentatively, given the gold clause, I don't plan to pursue a (million-dollar-plus?) surety bond and restraining order or sheriff's detainer against the Box, as I wouldn't know if the Box even is located in Santa Fe County. After all, this case isn't about "finding the McGuffin," is it? For me to do that would be contrary to the (correct) theory of my case, which is that where the "McGuffin" is, and conveyance or delivery, is entirely the obligor's contractual problem, not mine. So rather than waste time chasing the Box, for now I assume what I wrote in Item 4 above, and its liability implications, are enough incentive for the custodian not to fence the Box, and later to deliver it quietly and anonymously perhaps to custody of Karl on eventual court order or (of course, preferably) settlement.

6. JURISDICTION: I plan to seek a jurisdiction hearing once proper party substitution is completed.

7. TRUST: Santa Fe County Assessor shows that the Fenn home at 1021 Old Santa Fe Trail is held by both married partners in a trust. I have no further details.

I invite your comment about any of the above, or pertinent matters you might raise, before I file. I know you are busy, but the above matters are not complex. I am aware that gold clauses are not something lawyers often see particularly in states dating only to 1912, but I aim to have given enough guidance (and pardon my good-faith law lecture) for you to see quickly, or without deep research on your part, that gold clauses are genuine, are Court enforced, and that the Poem indisputably ends with one. As I face a hard deadline by rule to party substitute and I seek to progress the case, I would appreciate a response within a professional timeframe - I suggest by 6 PM Ariz. time, Thursday, 17 September.

Thank you

Brian Erskine
Plaintiff, 3:20-CV-08123-JJT

Two attachments: 1986 *People* Magazine article and Milton Friedman one-page excerpt.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.