IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Brian Erskine, | ) | |
| | ) | Case No. CV-20-08123-PCT-JJT |
| Plaintiff; | ) | |
| v. | ) | **MOTION TO SUBSTITUTE PARTY** |
| | ) | **BY F. R. C. P. 25(a)(1)** |
| Forrest Fenn, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO SUBSTITUTE PARTY BY F. R. C. P. ("Rule") 25(a)(1)**

Plaintiff notes the death of Defendant Forrest Fenn (D#35) in N. M.  I must show claim survival and substitute proper party.  Pursuant to Rule 25(a)(1) I timely Move to Substitute Zoe Fenn Old ("Zoe") in capacity as Personal Representative of the Estate of Forrest Burke Fenn, Deceased ("PR, PR Substitution, Estate") **and** in capacity as Successor Trustee of The Forrest and Peggy Fenn Revocable Trust u/a 11/21/86 ("Trustee, Trustee Substitution, Trust").[1]  Previous filings and terms are incorporated by reference, but "Fenn" now is "Forrest."

Showing both claim survival and PR Substitution is simple, but liability is party sensitive; defense's lame misdirection try (D#36) 'asks for what's coming.'  Showing cause for Trustee Substitution as key requires **detailed** presentation, previewing pending Rule 15(d) Supplemental Pleading ("SP").  Given my overwhelming evidence and aiming only to help, herein I respectfully show the Court a **case, and Quest, resolution path**.

---

[1] See Exhibit 1 for N. M. probate filings.

1

# CONTENTS

1. CLAIM SURVIVAL

2. PROPER SUBSTITUTION: PR CAPACITY

3. PROPER SUBSTITUTION (ALSO): TRUSTEE CAPACITY

    3.1 Meritorious Claim Summary: Land Art Evidences Solution

    3.2 Poem Gold Clause and Specific Performance: N. M. General Lien Statute

    3.3 Why Gold Clause Judgment Is Money Judgment

    3.4 Trustee Substitution Serves Public Interest, Does Not Prejudice Defense

4. ANTICIPATING DEFENSE NONSENSE

    4.1 My Prior Claim

    4.2 Coming Attractions: Other Possible Defense Misdirections

5.  OTHER APPLICABLE LAW

    5.1 Contract and Interest

    5.2 Community Property

    5.3 *Contra Proferentem*

6. JURISDICTION MINI-BRIEF

7. APPLICABLE LAW RECAP

8. SETTLEMENT OFFER WITHDRAWAL

**CONCLUSION**

**EXHIBIT LIST**

**1. CLAIM SURVIVAL**

Claim survives by N. M. Stat. 37-2-4: "No action pending in any court shall abate by the death of [parties, with inapplicable exceptions]."  See also Ariz. R. S. 14-3110.

**2. PROPER SUBSTITUTION: PR CAPACITY**

For PR Substitution, I cite defense's recent Motion (D#36), two (2) laws, and one (1) precedent.  First, showing weakness and misdirection, defense admitted in a Motion to Substitute 'Defendant's Estate' that Zoe is proper party.  Second, Ariz. R. S. 14-3110 calls for PR Substitution and N. M. Stat. 45-3-715(A)(3) states that a PR may perform decedent's contracts.  Third, Federal precedent calls for PR Substitution.[2]

**3. PROPER SUBSTITUTION (ALSO): TRUSTEE CAPACITY**

In a less unusual case, this Motion might wrap with PR Substitution, but I do also Move — **to the length limit** — to substitute Zoe in Trustee capacity, **as the Trust holds the real property** at 1021 Old Santa Fe Trail (**"Land"**).[3]  The N. M. Bar's probate guide states, "A judgment […] in another court against a personal representative to enforce a claim against a decedent's estate [allows] the claim" and "law allows creditors to receive

---

[2] "In determining the 'proper party' for substitution, courts generally look to the 'legal representative' of the deceased. See *Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999); see also *May v. Shuttle, Inc.*, No. 94-1019, 1996 WL 774536, *1 n.1 (D.D.C. Sept. 5, 1996) […] An Order consistent with this Opinion shall issue this same day." Memorandum Opinion (D#367), *Breen v. Chao*, No. 1:05-CV-00654-PLF, 2017 WL 2312884 (D. D. C. May 26, 2017).  **Please note that I might have cited this Memorandum Opinion incorrectly in an earlier filing**.

[3] Exhibit 2 is the county assessor's property record naming Forrest as Trustee.  A county assessor employee informally confirmed by reference to county clerk records that the Trust, for which Zoe is Successor Trustee, holds the Land.

payment **not just from estate assets**, but also from certain assets that passed outside of probate, such as [...] **trusts**.  See [N. M. Stat.] 45-6- 401(J), 46A-5-505A(3)."[4]  As the same natural person Zoe represents both Estate and Trust in the same case context, **Trustee Substitution adds no imaginable case burden to, and poses no prejudice or delay to, defense**.  However, Substituting Zoe in Trustee capacity and thus as possible judgment debtor **fully exposes the Land to liability**.  As I plan to detail in the pending SP and preview herein, equitable adjudication **pivots** on Land exposure, **motivating** defense compliance with any Court order such as for specific performance of Box entitlement by **gold clause.**

**3.1 Meritorious Claim Summary: Land Art Evidences Solution**

The Poem is an open unilateral contract I performed on August 20, 2018 by fixing a Location by outdoor landscape Photo.  Never Participating elsewhere, as repeatedly Exhibited I was at the Location to take the Photo because **overwhelming** narrative and other evidence **already converged** on the Location, as I promptly informed N. M. State Police and Forrest.  Later, by insight, I **visually** confirmed the Location, perceiving a work of **land art**: an **Overlay** matching the Photo showing that Forrest clearly had the **key repeated Drawing in the Memoir's epilogue made after the Photo's landscape**.[5]  Overlay is the 'picture worth a thousand words,' the 'sockdolager' or **objective evidence** distinguishing, clinching, and cogently communicating my true Solution.  Such clear

---

[4] See Exhibit 3.  This language suggests party Substitution in both Moved capacities.

[5] Exhibit 4 again presents the visual evidence for Zoe's convenience and for digital filing.

visual evidence as Overlay **must exist** for Quest resolution as the Poem's conveyance term "**I give you title** to the **gold**" unilaterally **obligates** Forrest's Box custody and **precludes** performance by abandoned Box find.  **Also, land art makes sense, as Forrest, an artist and gallery owner, earned wealth and celebrity in the art business.**

**Land art is core to culture** — for example, Native North and South American petroglyphs,[6] the Lascaux Caves in France, Australian Aboriginal songlines, and more.[7] Land art also is modern.  **Recently,** biologists surveying wildlife by helicopter 'found' a **hidden work of land art, a minimalist metal monolith, in a Utah red rock canyon**.[8] Global press and wide interest ensued.  The public speculated about the artist ("was it John McCracken?")  Hikers trekked to find the hidden art and were photographed, making headlines.  **Forrest based Quest Solution on the same concept, but for fame, never expecting anyone to find the land art or thus to claim the Box by contract.**

---

[6] On Oct. 19 archaeologists reported find of a domestic cat among Peru's Nazca Lines. On Nov. 29 a trove of ancient petroglyphs was reported found in the Colombian Amazon.

[7] See Exhibit 4.  From *Wikipedia*: "A songline […] is one of the paths across the land [in Aboriginal religion, marking] the route [of] 'creator-beings' [as] recorded in […] song cycles, stories, dance, and art, and […] ceremonies. They are a vital part of Aboriginal culture, **connecting people to land** [and **enabling practical navigation**].  Songlines […] have been linked to Aboriginal art sites."

[8] See Exhibits 4 and 5.  **"The wilderness of the Southwestern US has a rich and storied history of Land Art and especially for works that retain their magic and mystery by being largely inaccessible or challenging to locate,** from Robert Smithson's 1970 […] *Spiral Jetty* in the Great Salt Lake to Michael Heizer's 1969 *Double Negative* […] in Nevada" **(or Forrest Fenn's *Overlay* near Ouray, Colorado).** Angeleti, G.; *The Art Newspaper*, Nov. 24, 2020; *Alien visitors or avant-garde installation? Mysterious monolith discovered in the Utah desert.*  **Most major media, not only art press, extensively covered the recent Utah monolith find.**

As Forrest told the public almost immediately after June 4 Service, and later the Court, the Box was 'found' on June 5, in a plainly prompt **custodial retrieval**.  Forrest clearly prepared to convey the Box to me, but manipulatively didn't do it, while publicly representing other purposes, aiming to sustain breach by misdirection including by semantically true but substantially evasive sworn and public statements and other means.

**3.2 Poem Gold Clause and Specific Performance: N. M. General Lien Statute**

Trustee Substitution is **needed** so defense can't sustain absurd breach without **inescapably public alternative equitable liability**: Land.  Key Poem term "I give you title to the gold" is a **gold clause**, by 1977 Federal law (31 U. S. C. 5118) protecting my interest as contractual gold creditor in specific performance or conveyance.  The gold reference **alone** — **without** link to any dollar sum — protects.[9]  If judgment ordering specific performance of a gold clause is a "money judgment" — **and it is** — and presumably if the judgment debtor qualifies — there also "shall be a lien" on the Land by the general lien statute, N. M. Stat. 39-1-6.  Unusual as this case is, I argue that by law, precedent, equitable justice, and for any chance at Quest resolution, it **must** so work.

---

[9] Federal law neither discriminates between "gold" and "gold linked to a cash sum" nor creates multiple classes of gold clauses.  Beyond letter of law, see (Nobelist) Friedman, M. and Schwartz, A. J.; *A Monetary History of the United States, 1867-1960,* p. 468; *Princeton University Press*, *NBER* — "[A gold clause] required payment **either in gold proper**, **or** in a nominal amount of currency equal to [weight] of gold."  Milton Friedman published in 1963 and of history, but wrote with total authority; this definition endured in the 1977 law.  Also, upon information and belief the Box contains (*inter alia*) two hundred fifty-six (256) gold coins, including many of "a particular United States coin or currency or United States money measured in gold or a particular United States coin or currency," such as Eagle coins minted before 1933.  See 31 U. S. C. 5118 (a)(1)(A), (B), and (C) (etc.) and public Box photos and descriptions.

Dating to 2010 Memoir publication, the Poem is a rare **modern gold clause contract**.  Law and **clear, consistent, recent** rulings protect gold creditors in performed contracts **made or novated** after the 1977 law.[10]  Courts typically are reluctant to order specific performance.  Exceptions typically are **land** transaction contracts as land can't move or substitute and title fixes ownership, making an order to convey land virtually impossible to defy.  Yet Federal law protects **gold** creditors for specific performance, despite ease of defiance particularly for a 'notorious hidden treasure' that defense, 'in denial' but plainly exposed, manipulatively aims to keep 'hidden' seemingly 'by any means necessary.'  **Trustee Substitution is key to law's protection**, simultaneously **securing the Court** in any specific performance order and my protected interest in gold conveyance, thus **motivating** compliance — and even with title to the Land by judgment instead of the Box by compliance, that's tangible, irrefutable Quest resolution.

**3.3 Why Gold Clause Judgment Is Money Judgment**

In *Carrillo v. Coors*, deriving from a divorce, the N. M. Court of Appeals clarified the meaning of "money judgment" in the general lien statute, referencing Ariz. precedent in *Bryan v. Nelson*:[11]

---

[10] In *216 Jamaica Avenue, LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433 (6th Cir. 2008) the Court enforced a gold clause in a novated ninety-nine (99) year lease dating to 1912.  **Multiple other similar case precedents exist**.  See also Exhibit 5, Jarboe, M.; *The Plain Dealer* on cleveland.com, Aug. 29, 2008; *Business: Gold-based lease could cause million-dollar rent hike for Forest City Enterprises*.

[11] 901 P.2d 214 (N.M. Ct. App. 1995), drawing on *Bryan v. Nelson*, 180 Ariz. 366, 884 P.2d 252 (Ct. App. 1994), later also cited in *Sumner v. Sumner*, 176 Vt. 452 (Vt. 2004): "*Bryan* is consistent with case law around the country."

> "For [that] general lien statute to apply, the divorce decree [which was the subject of the case] must fit within the meaning of a 'money judgment.' **No New Mexico case has addressed the meaning of 'money judgment' in this context** […] The financial obligation in a judgment, or a decree, 'must be final and conclusive, and the amount due must be definite and certain' to create a statutory lien. [Citations] The meaning of 'final and conclusive' judgments [must be understood] in the context of the generally accepted rule that a judgment creates a lien when it is final, valid, definite, *and* collectible by execution against the debtor's property […] financial obligations in a divorce decree do not give rise to a judgment lien unless they are for a fixed sum which is collectible immediately. Unless a provision in the decree establishes a sum certain which is due immediately and enforceable by execution against the debtor's property (and we need not decide if that would necessarily create a lien), then no money judgment exists to which a judgment lien can attach; there is only a promise to pay future installments which can be secured by a consensual mortgage."

Multiple Poem provisions and the Quest's central theme both establish the same sum certain, as the Box is a single object (with contents) to be entitled as a unit as due immediately on performance. The exclusive conveyance term, in the last line denoting finality, refers to the Box of value (upon information and belief) credibly and reasonably estimated, by years of consistent press, as equitably similar to the Land's, as Exhibited.

In *Black's Law Dictionary*, a "sum" is "a quantity of money" and a "sum certain" is "any amount that is fixed, settled, or exact." Sums certain need not be dollar denoted, numerically denominated, exhaustively particularly itemized, or quantified by me. The Box is not vague. It is independently attested, was 'found' (!), was photographed for publication before hiding and after retrieval, has defined, publicly described contents; and

is of known dimensions, weight, and gold, coin, and other content.  Also in *Black's*, a "gold clause" is "a provision calling for payment in gold"[12] and "money" includes "assets that can easily be converted to cash."  **In those narrow few cases** where Federal law protects gold clause creditors, gold logically **must** be money.  **Simply put, the Box is an overdue sum certain, subject to gold clause in whose context gold is money, to be entitled to me by performance and secured by the Land by general lien statute.**

The Poem is not a divorce decree but a sensational open unilateral contract whose Box offer furnished award-winning publicity for the Land's Trustee owner, Forrest. Rightly interpreted, the Poem and Box meet the requirements of *Carrillo* and law — contract elements, 31 U. S. C. 5118, N. M. Stat. 39-1-6, *Black's*, more — to enforce the gold clause as money judgment with statutory lien.[13]  As I plan, in the pending SP, to demand relief by such judgment to motivate Box conveyance, I respectfully ask the Court to Substitute Zoe as Trustee to ensure a validly matching judgment debtor.

**3.4 Trustee Substitution Serves Public Interest, Does Not Prejudice Defense**

The Court has yet to approve my SP and I do not ask the Court to decide now, for this Motion, if my gold clause and statutory lien argument herein holds.  Instead, Trustee Substitution improves the Court's options, offering a way to motivate compliance with

---

[12] Incredibly, *Black's* goes on to editorialize — **wrongly**: "Gold clauses, which are now void, were once used in contracts…" (!) If contracted **after** the 1977 law, they are **not void** but **bind** as described herein and as ruled in *216 Jamaica Avenue* **and elsewhere.** Such error by *Black's* shows **why I am so pedantically painstaking in repeatedly and at length articulating my case, with much bold text**.  …But if I win, I'll tell *Black's*.

[13] With interest.

any specific performance Court order.  Trustee Substitution aligns the Poem's conveyance term, plain intent of written contract as publicly represented for a decade, and my intent in suit.  Such alignment serves equitable justice, **supporting the Court's credibility and definitive power in a highly publicly sensitive case**.

Fueling Forrest's folk heroism or fame, centering attention on 'Forrest the guru,' the Quest was a **'crackpot jackpot.'**  Judicial and public interest converge on **inarguable** resolution by contractual Box or equitable Land.  Motivating vast Participation to hunt the West for a Box subject to **unnoticed** contract and **misapprehended** entitlement term, the Quest augured indefinite casualties and chaos.  Participants were reported dead.  Police demanded Quest end.  Mayhem continued until I sued.[14]  Had Forrest died before suit, resolution would have been impossible.  Rescuers cheered Quest end, which Service caused because Forrest knew, after designing the Quest and writing the Poem, that its contractual performance triggered liability, motivating Box retrieval.  **It's abundantly clear 'what's really going on' — defense is performing an elaborate, shady ruse to deny me the earned win.**  I respectfully ask the Court to allow every reasonable provision, including Trustee Substitution, facilitating accountability and clear resolution.

---

[14] See press, Exhibit 5.  The Court knows as much as anyone: "At least five people died in their pursuit of the [Box], and while [Forrest] announced in June that it had been found, exact details […] have not come to light."  Staff; *National Parks Traveler*, Oct. 22, 2020; *Treasure Hunter Indicted for Digging in the Fort Yellowstone Cemetery* [that's Federal: see Justice Department notice].  Also see Vincent, I.; *New York Post*, Nov. 14, 2020; ***Treasure hunters cast doubt on 'finder' of Forrest Fenn's $2 M cache*** — doubts about only Forrest's absurd publicity, not me or my suit, as I had no article connection or mention.  **Forrest already has lost in the 'court of public opinion' as the June 5 'find' had the shelf life of milk: fresh for a short time, it soon came to reek of misdirection.**

## 4. ANTICIPATING DEFENSE NONSENSE

Defense palpably engages in a series of misdirections. I aim to defuse others so as to deny defense cause to exclude the Land from liability exposure, risking 'painless option' to defy a Court order for specific performance of Box entitlement by gold clause.

### 4.1 My Prior Claim

Defense leveraged the June 5 custodial Box 'find' for misdirection. **My claim filed well before. I won already and performed long ago, no matter what was 'found' where or what other dodgy contrivances after Service.**

Forrest stated that actions after Service vainly attempting to try the case in the media were not reactions to suit — so, maybe they were **planned** contingency publicity. The Threat Letter both is anticipatory breach and shows Forrest foreseeing suit. Maybe Forrest planned publicity for when suit **filed** presumably in N. M., not predicting Ariz. suit by colorable *True West* Event jurisdiction claim thus delaying response until **Service**. Defense now is 'trapped' by my prior claim and Forrest's actions and statements.

### 4.2 Coming Attractions: Other Possible Defense Misdirections

— **(a)** *'Just take the chest and go in peace'* — As I showed in the original Complaint, this line might be twisted to seem, but is not, conveyance. It directs a Participant not to leave the Location (impossibly) with the (absent) Box, but to take the bodily self, '**chest** first' or '**torso** with appendages,' to the town Ouray, Colo., named for the historic Peacemaker, Ute Chief Ouray. *'Just take the <u>**chest**</u> and <u>go in peace</u>'* means *'Get your <u>**ass**</u> <u>out of here</u>,'* not literally *'remove your donkey'* nor only the bodily *posterior*, but the *whole self*.

Conveyance is exclusive to the Poem's last line, separate by design from, not 'mixed with,' performance.  Exciting Box find, followed two (2) stanzas later by dull office meeting (as seeming from photos publicized after Service) and paper entitlement process, makes no sense.  The Quest's **central misdirection** is that performance means: Box find!

**— (b)** *'Nine (9) Clues'* — Reportedly, the Poem bears 'nine (9) clues.'[15]  The definitive contractual Poem **nowhere** indicates performance by 'clues.'  By plain direction and with a unique Box, performance is by **fixing a unique Location, evidently by land art**.

**— (c)** *'Double Cross'* — The Memoir's **colophon** (compare: 'Colorado') consists wholly of "ΩΩ" or the twenty-fourth (24th, matching the Poem's final line) and final Greek alphabet letter, repeated.  **Omega connotes apocalyptic ending**.[16]  Our alphabet's twenty-fourth (24th) letter is 'X' indicating **planned Quest double end (ΩΩ) by double cross (XX).**  Forrest's response to suit is a 'competing ending' — 'sorry, the Box just got found by some person in Wyoming' — **lame, failed dodge, against genuine Solution.**[17]  Defense seems likely to 'argue' that June 5 custodial 'find' was apocryphal performance and Forrest then 'gave' the custodian the 'found' Box.  Statutory lien could **motivate** lawful conveyance to me, **undoing** misdirection **purporting breach as performance**.

---

[15] See Exhibit 5: Staff; *TODAY News* [which is the major daily 'NBC TODAY Show' online], Feb. 27, 2013; *Follow these 9 clues to find Forrest Fenn's treasure!*

[16] Revelation 1:8, 21:6, 22:13: "I am the Alpha and the Omega."  See also Colorado state motto (and Original Complaint): *Nil sine numine,* "Nothing without the will of the deity."

[17] Double **horseshoe print** 'ΩΩ' also shows Forrest, of the '**One Horse** Land and Cattle Co.,' would 'kick like a horse' at any Solver.  **Rotate** 'ΩΩ' to get 'CC' for 'Climax Creek,' flowing directly to the Location (see Exhibit 4, and Original Complaint).

## 5. OTHER APPLICABLE LAW

After great depth in a typically brief Substitution Motion to forestall defense misdirection and other nonsense as already encountered, I will preview the rest quickly.

### 5.1 Contract and Interest

As noted, N. M. Stat. 45-3-715(A)(3) and (22) empower Zoe to act for Forrest. In N. M. law, a contract includes: offer, acceptance, consideration, and mutual assent. In a unilateral contract, a person accepts an offer by performing a required act.[18] The Poem contract meets all elements. N. M. Stat. 56-8-4 governs interest due.

### 5.2 Community Property

**Among other applicable law**, N. M. Stat. 40-3-12 holds that property acquired in marriage is presumed community property. Forrest married before 1955 and was a N. M. residency from 1972. In 1986 Forrest earned notoriety for lucrative art dealing through a gallery created in 1972 with marital cooperation.[19] N. M. Stat. 40-3-14(A) presumptively holds that "either spouse alone has full power to manage, control, dispose of and encumber the entire community personal property." The word "alone" in the Poem's first line aligns with law. Exceptions in (B)(1) and (2) do not apply, as the Poem is a contract to entitle but is not the title, while Forrest does not colorably assert "sole authority."

---

[18] Location fix, not Box find, with conveyance by entitlement. See N. M. Uniform Jury Instructions — Civil, Rule Set 13, Chapter 8; Univ. of N. M. Judicial Education Center.

[19] See Exhibit 5: Eady, B.; *People*, June 9, 1986; *Rivals Scorn His Santa Fe Gallery, but Forrest Fenn Baskets the Cash*. Such presumption stems from the fact that property was acquired during marriage. *Swink v. Sunwest Bank (In re Fingado)*, 113 Bankr. 37 (Bankr. D.N.M. 1990); *Hollingsworth v. Hicks*, 1953-NMSC-045, 57 N.M. 336, 258 P.2d 724.

**5.3** *Contra Proferentem*

Among other rule applications, a unilateral obligor may not write ambiguities into contract and then interpret them to justify breach.  The Poem manipulates **by design**.[20]

## 6. JURISDICTION MINI-BRIEF

I respectfully remind the Court that Suggestion of Death creates remediable want of personal jurisdiction by 28 U. S. C. 1631.  The Court didn't yet rule on jurisdiction.  Merits content, state court probate, plain general jurisdiction, and the unresolved Quest combine to show case transfer to N. M. comporting with justice and efficiency.

## 7. APPLICABLE LAW RECAP

— 28 U. S. C. 1631 allows case transfer to N. M.

— 31 U. S. C. 5118, with *216 Jamaica Avenue* and other precedent, protects gold creditors for gold clause contracts issued[21] (new or novated) after October 27, 1977.

— N. M. Stat. 37-2-4, 45-6-401(J), and 46A-5-505A(3) are as Exhibited.

— N. M. Stat. 45-3-715(A)(3) and (22) hold that a personal representative is empowered as this case would require, as does Ariz. R. S. 14-3110.

---

[20] Unilateral Poem with myriad Participants structurally matches insurance contracts, where this rule most often applies.  "Any burden of uncertainty created by […] inaccurate drafting, must be placed on those who do the drafting, and who are most able to bear that burden…" *Chiles v. Ceridian Corp.*, 95 F. 3d 1505, 1518 (10th Cir. 1996), quoting *Hansen v. Continental Ins. Co.*, 940 F. 2d 971, 982 (5th Cir. 1991).  Also, "The *Contra Proferentem* rule motivates the less risk-averse drafter to refrain from manipulating the other side by making the contract unclear." Weiss, U.; *The Regressive Effect of Legal Uncertainty*, 2019 J. Disp. Resol. (2019).

[21] This law's legislative history reveals that "issued" means "entered into." *Rudolph v. Steinhardt*, 721 F.2d 1324, 1330 (11th Cir. 1983), quoting N. C. Sen. Jesse Helms.

— N. M. Stat. 40-3-12 holds that property (Box) acquired in marriage is presumed community property and N. M. Stat. 40-3-14(A) holds that either spouse alone has full power to obligate the entire community personal property.  Exceptions are inapplicable.

— In N. M. law, a contract includes: an offer, an acceptance, consideration, and mutual assent.  In a unilateral contract, a person accepts an offer by performing a requested act.  Offer terms must clearly indicate that an act is required for acceptance.

— N. M. Stat. 56-8-4 governs interest due on contract.

— N. M. Stat. 39-1-6 is the general lien statute.

— Exhibit 3 references other applicable N. M. laws, and other laws and rules may apply.

— Applicable precedent, *Black's* definitions, and Milton Friedman affirm my case.

**8. SETTLEMENT OFFER WITHDRAWAL**

Though willing to meet, I cancel my settlement offer.  In fact, law, public esteem, and more, defense is exposed as empty, reportedly all but universally doubted without reference to my suit.  **Six (6) months after Box 'find' with time passing wonderfully awkwardly for the defense, Forrest's credibility implosion** seems irretrievable.  Hoping to bankrupt me by attachment of their astronomical legal fees while groping for semantics, misdirection, and injustice by protraction, really defense is bankrupt.  Seemingly few await the 'emergence' of the 'genius June 5 finder' — a mere custodian.  Exhibited probate filings show that interested non-family parties consist of me and an Illinois woman in whose substantially unrelated tort suit I am uninvolved.  This is over — the die is cast.  **I won.  Give me title to the Box, and with accrued interest.**

**CONCLUSION**

Forrest wrote and published, for widest Participation and fame, an elaborately **infamous** unilateral gold clause contract full of manipulative ambiguities but with fixed, settled money consideration in gold and more: the Box, clearly conveying by entitlement. Hawking it sharply enough to earn global renown of sorts and *True West* award, 'clever Forrest' — the 'smartest man in the room' or the West or something — was **sure but wrong** that **no one** could **find** the land art **and** perceive contract **and** dare bring **and** sustain claim.  To wrap this Southwestern *Looney Tunes* episode[22] herein I preview for the Court, **enabled by Trustee Substitution,** a resolution path by narrow gold clause ruling and statutory lien, usefully applicably deterring future unsafe, misleading Quests.

 Both Poem contract and land art Drawing are in the Memoir, but defense now is 'drawing dead' whether this suit is like 'poker' or a 'gunfight at the corral.'  With no great brilliance, I read the Poem, resourced a Participant's blog, found Location and no Box, eventually found land art, then contract; after failing to raise Forrest, **reluctantly** sued.  The Quest is neither a baffling mystery anymore, nor a puzzle a conveniently anonymous genius absurdly 'solved' after Service, torturously publicly misrepresented as belated *fait accompli* aiming to deny me conveyance or remedy.  **I Solved the contractual Quest at objectively visible, Exhibited, crisply enforceable terms.  Justice now is required.**

---

[22] Forrest would have known that in mythology, Coyote is the Native American trickster, but "Beep Beep" said Plaintiff the Road Runner: Misdirection's tiny parasol won't shield Wile E. Defense (*"Overconfidentii vulgaris"* — Noble, M., Jones, C.; *Zoom at the Top,* June 30, 1962) from self-inflicted falling anvils of contract, evidence, law, and justice.

Claim survives; 'stars align' — not only in Exhibits, above the labeled 45° slope and rock layers at the Location, between the timbering man and nesting bird, **a big 'X' marking the spot, as confirmed and reconfirmed.** I show cause for and sustain both PR and Trustee Substitution. Robust resolution is available. Specific performance of gold clause as money judgment plus statutory Land lien motivating conveyance as the key driver of Trustee Substitution also marks a judicial 'sweet spot' of narrow, credibly conclusive forcefulness in a case 'Drawing' wide public notice.[23] Thus does it all 'come together' — and I respectfully ask the Court to Substitute Zoe Fenn Old in capacity as Personal Representative of the Estate of Forrest Burke Fenn, Deceased **and in capacity as Successor Trustee of The Forrest and Peggy Fenn Revocable Trust u/a 11/21/86.**

Respectfully submitted this 4th day of December, 2020.

*/s/ Brian Erskine*
_____
Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

---

[23] Reasonably projected defiance of any such Court order stems from defense seeming **inexcusably** to care little who **died**, was **rescued or hazardously rescuing**, bore what dangers for how long (etc.) disdaining safety, truth, law, justice, unilateral contract, and common sense; stonewalling Quest Solution, falsely protracting a 'fun mystery' (?) prioritizing fame, risking indefinite casualties (etc.) **while knowing it Solved for years. But for Land liability, what would defense care about a ruling and Court order?**

# EXHIBIT LIST

1. N. M. Probate Filings

2. County Assessor Land Record

3. N. M. State Bar Probate Summary Guide

4. Digital Re-Presentation of Summary Visual Evidence of Performance by Location (and Land Art Discovery)

5. Press

   1. (Utah Monolith as Land Art) Angeleti, G.; *The Art Newspaper*, **Nov. 24, 2020**; *Alien visitors or avant-garde installation? Mysterious monolith discovered in the Utah desert*.

   2. (Gold Clause / *216 Jamaica Avenue*) Jarboe, M.; *The Plain Dealer* on *cleveland.com*, Aug. 29, 2008; *Business: Gold-based lease could cause million-dollar rent hike for Forest City Enterprises*.

   3. (Participant indictment) Staff; *National Parks Traveler*, **Oct. 22, 2020**; *Treasure Hunter [Federally] Indicted for Digging in the Fort Yellowstone Cemetery* [plus Justice Department indictment notice].

   4. (Public doubts about Forrest / defense / June 5 'find') Vincent, I.; *New York Post*, **Nov. 14, 2020**; *Treasure hunters cast doubt on 'finder' of Forrest Fenn's $2 M cache*.

   5. (Nine Clues) Staff; *TODAY News*, Feb. 27, 2013; *Follow these 9 clues to find Forrest Fenn's treasure!*

   6. (Community Property, etc.) Eady, B.; *People*, June 9, 1986; *Rivals Scorn His Santa Fe Gallery, but Forrest Fenn Baskets the Cash*.

## CERTIFICATE OF SERVICE

By Rule 25 requirements for service on parties (Rule 5) and nonparties (Rule 4), I hereby certify that on December 4 or 5, 2020, I electronically forwarded the foregoing with Notice, Proposed Order, and Exhibits (and fee) to a professional process server for service on two (2) nonparties named in probate filings; placed same in the U. S. Mail, certified return receipt requested, for service on proposed Substitute Party Zoe Fenn Old through counsel, John Hickey of April, Dolan, and Hickey, P. C.; and electronically filed same with the Clerk using the CM/ECF system, which will serve notice of filing to counsel of record and the Court Monitor to their registered electronic mail addresses:

James W. Armstrong
Brian E. Ditsch
SACKS TIERNEY, P. A.

Karl Sommer
SOMMER KARNES AND ASSOCIATES LLP
*Pro Hac Vice*

*Attorneys for Defendant*

_____
Brian Erskine
Plaintiff
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com