1    WO

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9    Brian Erskine,                          No. CV-20-08123-PCT-JJT

10              Plaintiff,                    **ORDER**

11   v.

12   Forrest Fenn,

13              Defendant.

14

15          At issue is Defendant Forrest Fenn's Motion to Dismiss for Lack of Personal

16   Jurisdiction (Doc. 15, MTD), to which Plaintiff Brian Erskine filed a Response (Doc. 21,

17   Resp.) and Defendant filed a Reply (Doc. 31). The Court also considers multiple sets of

18   additional motions. These include Plaintiff's Motion to Supplement the Complaint

19   (Doc. 22), Defendant's Response (Doc. 26), and Plaintiff's Reply (Doc. 27); Plaintiff's

20   Motion to Transfer Jurisdiction (Doc. 29); Defendant's Motion to Strike Improper and

21   Unauthorized Filings (Doc. 32), to which Plaintiff filed a Response (Doc. 33), and

22   Defendant filed a Reply (Doc. 34); Defendant's Motion to Substitute Party (Doc. 36),

23   Plaintiff's Response (Doc. 37), and Defendant's Reply (Doc. 38); and lastly Plaintiff's

24   Motion to Substitute Party (Doc. 39), Defendant's Response (Doc. 41), and Plaintiff's

25   Reply (Doc. 43). For the following reasons, the Court will grant Defendant's Motion to

26   Dismiss for lack of personal jurisdiction as well as Defendant's Motion to Substitute Party.

27   The remaining motions are denied as moot.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  BACKGROUND

As a preliminary matter, Plaintiff added facts to his Response to Defendant's Motion to Dismiss that were not in the Complaint. Defendant has not objected to the inclusion of these facts, which are relevant, and in some cases, support his argument that the Court does not have personal jurisdiction. Therefore, the Court will consider the additional facts at this stage of the proceedings.

In 1998, Defendant hid a treasure chest (the "Chest") in an outdoor location in the Western United States. Subsequently, in 2010, Defendant published a memoir titled *The Thrill of the Chase* (the "Memoir") that included a poem providing clues that led to the Chest's location. (Compl. Ex. 7 at 3.) Over the next several years, the Memoir increased in popularity and many people tried to solve the clues in the poem and find the Chest. (Compl. Ex. 9.) In 2014, Defendant travelled to Tucson, Arizona on a one-day trip to accept the "True Westerner Award" from *True West* magazine for his work on the Memoir.

Plaintiff learned of the Memoir and the hidden Chest in 2016 while in Cambodia and alleges that in August 2018 he "solved" the poem and located the spot where the Chest should have been located. (Resp. at 11; Compl. ¶¶ 18, 23.) However, Plaintiff acknowledges that he never physically located or possessed the Chest. (Compl. ¶ 26.)

Plaintiff alleges that he subsequently reached out to Defendant in order to inform him that he had solved the poem but had not located the Chest. (Compl. ¶ 24.) He alleges that Defendant was confused as to why Plaintiff had contacted him, asking "Why are you doing this?" (Resp. at 12.) Plaintiff does not allege that Defendant ever acknowledged that he had solved the poem or that he had located the spot where the chest was hidden. Defendant subsequently verified that a different searcher found the Chest in Wyoming. (Resp. at 12.)

Plaintiff is a resident of Yavapai, Arizona and Defendant was a resident of Santa Fe, New Mexico. Defendant lived in Phoenix for approximately four years while serving in the military from 1959-1964, and with the exception of his one-day trip in 2014, has not

1  returned to, owned property in or had any other connection to Arizona since then. (MTD
2  Ex. 1 ¶¶ 2-3.)

3       On May 26, 2020, Plaintiff filed a Complaint in the District of Arizona under the
4  Court's diversity jurisdiction alleging breach of contract under Arizona state law. Plaintiff
5  alleges that Defendant's poem created a unilateral contract that Plaintiff performed by
6  following the clues and "solving" the puzzle. He contends that Defendant breached the
7  contract because the chest was not in the location set forth in the poem. Defendant moved
8  to dismiss the Complaint for lack of personal jurisdiction. In the interim, Defendant passed
9  away on September 7, 2020 and Defendant's estate moved to substitute Mr. Fenn's
10 daughter, Zoe Fenn Old, who was appointed the Personal Representative of Defendant's
11 estate.

12 **II.     LEGAL STANDARD**

13      A federal court must have jurisdiction over the parties to adjudicate a matter. *Ins.*
14 *Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party
15 invoking the jurisdiction of the federal court has the burden of establishing that personal
16 jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)
17 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc,*
18 *Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Prior to trial, the
19 defendant may move to dismiss the complaint for lack of personal jurisdiction. *Data Disc,*
20 *Inc.* 557 F.2d at 1285; Fed. R. Civ. P. 12(b)(2). When the defendant moves to dismiss for
21 lack of personal jurisdiction, the plaintiff is "'obligated to come forward with facts, by
22 affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925,
23 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787
24 (9th Cir. 1977)).

25      There is no statutory method for resolving the question of personal jurisdiction, so
26 "the mode of determination is left to the trial court." *Data Disc,* 557 F.2d at 1285 (citing
27 *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where a court determines that it will receive
28 motions and supporting affidavits to resolve the question of personal jurisdiction, the

1  plaintiff must "only make a prima facie showing of jurisdictional facts through the

2  submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining

3  whether the plaintiff has met its burden, the "uncontroverted allegations in [the plaintiff's]

4  complaint must be taken as true, and conflicts between the facts contained in the parties'

5  affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Intern.*

6  *Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

7  To establish jurisdiction over the defendant, the plaintiff must show that (1) the

8  state's long-arm statute confers personal jurisdiction over the defendant, and (2) the

9  exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk*

10 *v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Under Arizona's

11 long-arm statute, the exercise of personal jurisdiction is allowed to the same extent as the

12 United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d

13 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995)

14 (stating that under Arizona Rule of Civil Procedure 4.2(a), "Arizona will exert personal

15 jurisdiction over a nonresident litigant to the maximum extent allowed by the federal

16 constitution"). A court in Arizona may exercise personal jurisdiction over a nonresident

17 defendant when doing so comports with constitutional principles of due process. *Cybersell*,

18 130 F.3d at 416.

19 Constitutional requirements of due process require that the nonresident defendant

20 have certain "minimum contacts" with the forum state such that the suit does not offend

21 "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

22 U.S. 310, 316 (1945); (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data*

23 *Disc*, 557 F.2d at 1287. A court may assert general or specific jurisdiction over the

24 nonresident defendant. *Cybersell*, 130 F.3d at 416. General jurisdiction exists where the

25 nonresident defendant's activities within a state are "substantial" or "continuous and

26 systematic." *Data Disc*, 557 F.2d at 1287.[1] A court may exercise specific jurisdiction where

27

28 _____
[1] The facts set forth do not support a finding that this Court has general jurisdiction over Defendant, nor does Plaintiff so argue.

- 4 -

1    the defendant's specific contacts have a substantial connection and give rise to the claim

2    in question. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).

3         Here, Mr. Erskine contends that the Court has specific jurisdiction over Mr. Fenn.

4    Whether this Court may exercise specific jurisdiction turns on the extent of the defendant's

5    contact with the forum and the degree to which the plaintiff's suit is related to the

6    defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433

7    F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit Court of Appeals uses the following

8    approach to determine whether the court may exercise specific jurisdiction over a

9    nonresident defendant: (1) the nonresident defendant must do some act in or consummate

10   some transaction with the forum, or perform some act by which it purposefully avails itself

11   of the privilege of conducting activities in the forum, thereby invoking the benefits and

12   protections of its laws; (2) the claim must be one which arises out of or results from the

13   defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

14   *Data Disc*, 557 F.2d at 1287.

15        The plaintiff bears the burden of establishing the first two requirements of the test.

16   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the

17   plaintiff establishes the first two requirements, the burden shifts to the defendant to

18   establish the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

19   F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

20   476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to

21   comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

22   **III.    ANALYSIS**

23        As a preliminary matter, the Court grants Defendant's Motion to Substitute Party

24   (Doc. 36), requesting that Ms. Old, in her capacity as the Personal Representative of

25   Mr. Fenn's Estate, be substituted for the deceased Mr. Fenn. Plaintiff filed a response,

26   objecting to Defendant's request, but that objection is without merit. Therefore,

27   Defendant's motion is granted, and Ms. Old will defend Mr. Fenn's estate in this action

28   going forward.

1        **A.     Lack of Personal Jurisdiction**

2        Defendant contends that Plaintiff failed to satisfy the first two prongs of the Ninth

3 Circuit's test for specific jurisdiction and that an exercise of jurisdiction over Defendant in

4 Arizona would be unreasonable. (MTD at 6-10.) While Mr. Fenn's death affects the

5 Court's analysis of the reasonableness of specific jurisdiction over the Defendant, the Court

6 need not discuss this prong because Plaintiff has not established either of the first two

7 prongs of the test.

8        To meet the first prong of the Ninth Circuit's three part test – that the defendant

9 purposefully directed activities at the forum state – the plaintiff must show the defendant

10 "either (1) 'purposefully availed' himself of the privilege of conducting activities in the

11 forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co.*

12 *v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802).

13 The purposeful availment test is typically used in breach of contract suits, the subject matter

14 at issue here. *Schwarzenegger*, 374 F.3d at 802.

15        A showing that a defendant purposefully availed himself of the privilege of doing

16 business in a forum state typically involves evidence of the defendant's actions in the

17 forum, such as executing or performing a contract there. By taking such actions, a

18 defendant "purposefully avails itself of the privilege of conducting activities within the

19 forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*,

20 357 U.S. 235, 253, (1958). In return for these "benefits and protections," a defendant

21 must—as a quid pro quo— "submit to the burdens of litigation in that forum." *Burger King*,

22 471 U.S. at 476.

23        Here, Defendant did not have sufficient minimum contacts with Arizona to warrant

24 the Court's exercise of specific personal jurisdiction. Plaintiff argues that Defendant's

25 acceptance of the *True West* award in Arizona in 2014 establishes the minimum contacts

26 necessary for specific jurisdiction because Defendant accepted the award in order to give

27 the Chest and his Memoir more publicity. The allegations in Plaintiff's Complaint do not

28 support this assertion. Plaintiff even acknowledges that Defendant was nominated and

1   received the award "in recognition … for this contribution and preservation of America's

2   Western heritage." Defendant asserts, and Plaintiff does not contest, that he did not in any

3   way solicit the award. (Resp. Ex. 1 ¶ 11.) The mere acceptance of an award is not equivalent

4   to a promotional book tour.

5   Besides Defendant's acceptance of the award, Plaintiff alleges no additional facts

6   that connect Defendant to Arizona. Indeed, Plaintiff alleges that the treasure was hidden in

7   Colorado and does not allege that the Memoir's publication or distribution invoked the

8   benefits and protections of Arizona law in any manner. While Plaintiff alleges that he

9   worked on solving the Memoir while living in Arizona, this does not bear on Defendant's

10  connections to the state. In sum, Defendant's one-day trip to Arizona in 2014 does not

11  satisfy the first prong of the test for specific personal jurisdiction.

12  Even if Defendant's one-day visit to Arizona was sufficient to establish minimum

13  contacts with the State, Plaintiff fails the second prong of the test because his breach of

14  contract claim does not arise out of or result from his reception of the award in Arizona.

15  Plaintiff's entire argument for breach of contract is centered around the allegation that the

16  Chest was not located where the Memoir indicated that it would be located. This injury is

17  in no way connected to Defendant's acceptance of the award in 2014. Plaintiff also does

18  not allege that he learned of the Chest through Defendant's acceptance of the award in

19  Arizona. Rather, Plaintiff acknowledges that he learned of the Memoir while he was in

20  Cambodia in 2016. Because there is no connection between Defendant's contacts with

21  Arizona and the alleged injury that Plaintiff has suffered, Plaintiff fails the second prong

22  for specific personal jurisdiction.

23  **B.      Plaintiff's Request to Transfer Jurisdictions**

24  Plaintiff requests in his Response that if the Court dismisses his Complaint for lack

25  of personal jurisdiction, it transfer the case under 28 U.S.C. § 1631 to the District of New

26  Mexico where the Court would have general jurisdiction based on Defendant's residence.

27  The Court will deny Plaintiff's request. Section 1631 provides that: "Whenever a civil

28  action is filed in a court… and that court finds that there is a want of jurisdiction, the court

1  shall, if it is in the interest of justice, transfer such action… to any other such court… in

2  which the action… could have been brought at the time it was filed…" Plaintiff has not

3  shown that transferring the case to the District of New Mexico would be "in the interest of

4  justice." The statute of limitations on Plaintiff's breach of contract claim will not have

5  expired at the time of this case's dismissal, meaning Plaintiff can re-file in a different

6  jurisdiction and will thus not be prejudiced if the Court does not transfer the case.

7  Furthermore, transfer of the case does not serve the interests of justice "where the

8  plaintiff fails to make prima facie showing of a right to relief." *Clark v. Busey*, 959 F.2d.

9  808, 812 (9th Cir. 1992). Here, Plaintiff's Complaint does not state a claim. Plaintiff alleges

10 that the poem in Defendant's Memoir was a unilateral contract that Plaintiff performed by

11 following the clues to a location deemed by Plaintiff to be correct. Importantly, Plaintiff

12 does not allege that he physically located the Chest at this site or ever possessed it in any

13 manner. The Court has serious doubts as to whether the poem is in fact a unilateral contract.

14 Regardless, there is nothing in the poem's contents that would indicate that simply

15 "solving" the poem's clues would in turn entitle a person to the Chest. Rather, the poem's

16 fourth stanza states "Just take the chest and go in peace," making it clear that any claim to

17 the Chest's contents will be based on actual physical possession of the Chest. Under both

18 Arizona as well as New Mexico state law, unambiguous contracts are interpreted as written.

19 *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (1977); *Richardson v. Farmers Ins. Co.*, 811

20 P.2d 571, 572, 112 N.M. 73, 74 (1991). Plaintiff allegedly following the clues to arrive at

21 the "correct" location thus does not entitle him to treasure or any other type of damages.

22 Courts have very limited resources and it would not serve the interests of justice to obligate

23 the District Court of New Mexico to spend time on this case where Plaintiff has failed to

24 allege facts that state a plausible claim for breach of contract. Plaintiff's request to transfer

25 the case to the District of New Mexico is denied.

26 Plaintiff also filed a separate Motion to Transfer, which expanded on the arguments

27 made in his Response. While the Court took Plaintiff's additional arguments into

28

1  consideration when reaching its decision, it will deny Plaintiff's motion as moot because it

2  is duplicative of the request in his Response.

3          **C.**    **Plaintiff's Motion to Supplement the Complaint**

4        The Court will deny Plaintiff's motion to supplement the pleadings under Fed. R.

5  Civ. P 15(d) because any supplemental filing would be futile. Plaintiff's motion requests

6  leave to file a supplemental pleading based on "new events" that have taken place since the

7  filing of his initial Complaint. (Doc. 22 at 3.) None of the new events relate in any way to

8  the Court's finding that it lacks personal jurisdiction over the Defendant; nor do they

9  bolster Plaintiff's claims for breach of contract. The supplemental pleading would be futile,

10  and Plaintiff's motion is denied.

11          **D.**    **Remaining Motions Denied as Moot**

12        Because the Court has granted Defendant's Motion to Dismiss as well as

13  Defendant's Motion to Substitute Party, Defendant's Motion to Strike and Plaintiff's

14  Motion to Appoint a New Party in Place of Defendant are denied as moot.

15          **E.**    **Attorney's Fees**

16        Pursuant to A.R.S. § 12-341.01, Defendant requests its attorneys' fees and costs in

17  defending this action. The Court agrees that Defendant is entitled to seek reasonable

18  attorneys' fees and costs and may submit an application for fees and costs that complies

19  with the applicable rules.

20        **IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss

21  (Doc. 15) and dismissing this matter with prejudice for lack of personal jurisdiction.

22        **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Supplement the

23  Original Complaint (Doc. 22).

24        **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Transfer Jurisdiction

25  as moot (Doc. 29).

26        **IT IS FURTHER ORDERED** denying Defendant's Motion to Strike as moot

27  (Doc. 32).

28

1      **IT IS FURTHER ORDERED** granting Defendant's Motion to Substitute Party

2   (Doc. 36).

3      **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Appoint a New Party

4   in Place of Defendant as moot (Doc. 39).

5      **IT IS FURTHER ORDERED** that Defendant shall file any application for fees

6   within 14 days of the date of this order.

7      Dated this 1st day of February, 2021.

8

9      Honorable John J. Tuchi
       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28