James W. Armstrong (No. 009599)
james.armstrong@sackstierney.com
Brian E. Ditsch (No. 009075)
brian.ditsch@sackstierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., Fourth Floor
Scottsdale, Arizona 85251-3693
Telephone: (480) 425-2600

Karl H. Sommer (admitted *pro hac vice*)
karls@sommerkarnes.com
SOMMER KARNES & ASSOCIATES
125 Lincoln Ave, Suite 221
Santa Fe, New Mexico 87501
Telephone: (505) 989-3800

*Attorneys for Zoe Fenn Old, as Personal Representative of the Estate of Forrest Burke Fenn*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Brian Erskine, | No. 3:20-cv-08123-PCT-JJT |
| Plaintiff, | |
| v. | |
| The Estate of Forrest Burke Fenn, by and through its Personal Representative, Zoe Fenn Old, | **DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES** |
| Defendant. | |

Pursuant to LRCiv 54.2 and the Court's Order [Doc 46] of February 1, 2021, Defendant Zoe Fenn Old, as the Personal Representative of the Estate of Forrest Burke Fenn (the "Estate"), hereby moves for an award of the reasonable attorneys' fees incurred in the successful defense this action. Based upon the following Memorandum of Points and Authorities and the Declarations of counsel and other Exhibits attached hereto, Ms. Old requests that the Estate be awarded the total sum of $98,891.57 in attorneys' fees against Plaintiff Brian Erskine, which includes $1,100.12 in computerized legal research charges paid by the Defendant.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE ESTATE'S ELIGIBILITY FOR AN AWARD OF ATTORNEYS' FEES

### A. Nature of the Case

This action was commenced by Mr. Erskine on May 26, 2020. The Complaint [Doc 1] alleged that Mr. Fenn -- a 48-year continuous resident of Sant Fe, New Mexico -- breached a "unilateral contract" by authoring a memoir entitled *The Thrill of the Chase* (the "Memoir") that included a poem containing clues to a treasure chest hidden by Mr. Fenn in the Rocky Mountains (the "Chest") which Mr. Erskine purportedly "solved." More specifically, Mr. Erskine alleged that he ascertained the location of that Chest (without actually finding and retrieving it) somewhere between Silverton and Ouray, Colorado, and that he "performed" the contract by photographing a landscape in August 2018 purportedly matching an illustration in Mr. Fenn's Memoir. Mr. Erskine further alleged that soon afterward, he informed Mr. Fenn of the "solution" of the Memoir's "puzzle," and that Mr. Fenn breached their contract when his attorney wrote Mr. Erskine on March 6, 2020 to explain that ownership of the treasure Chest could only be attained by actually finding the Chest in the location Mr. Fenn hid it over ten years earlier -- not by allegedly "solving" or "decoding" the poem in Mr. Fenn's Memoir.[1] Shortly after the filing of Mr. Erskine's Complaint, the Chest was actually found by another person in Wyoming.

On June 25, 2020, Mr. Fenn moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(2), contending that neither general nor specific personal jurisdiction could be constitutionally asserted in Arizona due to the absence of any meaningful minimum contacts between Mr. Fenn and this State. [Doc 15] In his Reply, Mr. Fenn also contended that transferring this case to the District Court of New Mexico in lieu of dismissal was not "in the interest of justice" under 28 U.S.C. § 1631 because no colorable claim for relief had been shown. [Doc 31]

---

[1] Counsel's letter to Mr. Erskine further explained that "Mr. Fenn has never been to and is entirely unfamiliar with the location in Colorado that you identify in your 'solve.'"

### B. Judgement Upon Which the Estate Seeks a Fee Award

Following the death of Mr. Fenn, the Court granted Defendant's Motion to Dismiss for lack of personal jurisdiction, denied Mr. Erskine's request for a transfer under Section 1631, and dismissed his Complaint for breach of contract in its entirety. [Doc 46] The Court further "agree[d] that Defendant is entitled to seek reasonable attorneys' fees" in defending this action pursuant to A.R.S. § 12-341.01. [*Id.* at 9]

### C. A.R.S. § 12-341.01(A) Authorizes an Award of Fees to the Estate

Section 12-341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorneys' fees." Moreover,

> According to A.R.S. § 12-341.01.B, the purpose of an award of attorneys' fees under section A of that statute is to "mitigate the burden of the expense of litigation to establish a just claim or defense." Thus, A.R.S. § 12-341.01.A is remedial in nature and such relief is equally available to those who successfully defend an action as to those who seek affirmative relief.

*Schwartz v. Farmers Ins. Co. of Arizona*, 166 Ariz. 33, 38 (App. 1990); *see also First Nat'l. Bank of Arizona v. Continental Bank*, 138 Ariz. 194, 199-200 (App. 1983) (express mitigation purpose of section § 12-341.01(B) does not limit fee awards only to those who could not otherwise afford to litigate). Even more pertinent here, the statute is also intended to encourage more careful analysis prior to filing suit, given the risk of paying the opponent's attorneys' fees. *See American Power Products, Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 369, ¶20 (Ariz. 2017); *Chaurasia v. General Motors Corp.*, 212 Ariz. 18, 29, ¶43 (App. 2006); *All-Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 219 (App. 1994).[2]

In light of the remedial objectives of Section 12-341.01(A)-(B), it has been consistently construed in a liberal manner, particularly the "arising out of a contract" clause. *See generally* ARIZONA FEES MANUAL § 2.6; John C. Rambow, Note, *Statutory*

---

[2] Indeed, Mr. Fenn put the Plaintiff immediately on notice of his intention to seek an award of attorneys' fees under Section 12-341.01(A) in Mr. Fenn's very first substantive filing, his Motion to Dismiss, complete with supporting case citations. [Doc 15 at 10]

3

*Attorneys' Fees in Arizona:  An Analysis of A.R.S. Section § 12-341.01*, 24 ARIZ. L. REV. 659, 662-65 (1982); *see ML Servicing Co. v. Coles*, 235 Ariz. 562, 570, ¶30 (App. 2014) ("meaning of 'arises out of contract' is broad for the purpose of this statute").  Thus, as in this case, "[e]ven when a contract is alleged by a plaintiff and the defendant successfully proves that there was no contract, the action is considered to have arisen out of contract for purposes of A.R.S. § 12-341.01."  *Rudinsky v. Harris*, 231 Ariz. 95, 101, ¶27 (App. 2012) (citing *Lacer v. Navajo County*, 141 Ariz. 392, 394 (App. 1984)), *followed in ML Servicing Co.*, 235 Ariz. at 570, ¶30; *accord Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 490, ¶36 (App. 2007) (fees may be awarded under Section 12-341.01(A) "on the basis that there is no contract or there has been no breach of the contract").  Moreover, even though it may not constitute an adjudication on the merits, a defendant (like Mr. Fenn) who files a successful motion to dismiss a contract action for lack of personal jurisdiction likewise qualifies for an award of fees under the statute.  *Balestrieri v. Balestrieri,* 232 Ariz. 25, 28, ¶10 (App. 2013).

## II.   THE ESTATE IS ENTITLED TO A FEE AWARD

In considering a party's entitlement to an award of attorneys' fees under Section 12-341.01(A)-(B), "[t]he trial judge has broad discretion in fixing the amount of the fee provided that 'such award may not exceed the amount paid or agreed to be paid.'" *Design Trend Int'l Interiors, Ltd. v. Cathay Enter., Inc.,* 103 F.Supp.3d 1051, 1063 (D.Ariz. 2015) (quoting *Associated Indem. Corp., v. Warner,* 143 Ariz. 567, 570 (1985)).

> Among the factors to consider are (1) the "merits of the claim or defense presented by the unsuccessful party," (2) whether the "litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result," (3) whether "[a]ssessing fees against the unsuccessful party would cause an extreme hardship," (4) whether the "successful party did not prevail with respect to all of the relief sought," (5) "the novelty of the legal question presented," (6) "whether such claim or defense had previously been adjudicated in this jurisdiction," and (7) "whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees."

4

*Design Trend,* 103 F.Supp.3d at 1063-64 (quoting *Warner,* 143 Ariz. at 570).

### A. Mr. Erskine's Claims Lacked Merit

In addition to finding that Mr. Erskine fell far short of establishing either of the first two prongs of the test for specific personal jurisdiction, the Court further concluded in its February 1 Order that a transfer of this case to the District Court of New Mexico was unjustified because Mr. Erskine's Complaint did not state a plausible claim for breach of contract:

> [T]here is nothing in the poem's contents that would indicate that simply "solving" the poem's clues would in turn entitle a person to the Chest. Rather, the poem's fourth stanza states "Just take the chest and go in peace," making it clear that any claim to the Chest's contents will be based on actual physical possession of the Chest. Under both Arizona as well as New Mexico state law, unambiguous contracts are interpreted as written. \*\*\* Plaintiff allegedly following the clues to arrive at the "correct" location thus does not entitle him to treasure or any other type of damages.

[Doc 46 at 8]

### B. Defendant's Litigation Efforts Were Necessary to Achieving the Result

As mentioned above, months prior to the filing of this lawsuit, Mr. Fenn's New Mexico counsel wrote Mr. Erskine following the dismissal of another action (*Hanson v. Fenn,* No. 1:19-cv-01124 (D. N.M. filed Dec. 2. 2019)) against Mr. Fenn by a person claiming to have been defrauded in his search for the Chest -- an action in which Mr. Erskine attempted to intervene. Counsel's letter [Doc 1, Ex.11] plainly explained why Mr. Erskine's own claims to the Chest were factually groundless since he never actually found it, yet Mr. Erskine persisted and filed suit in Arizona. Shortly thereafter, another person (now identified as Jack Stuef) did find and retrieve the Chest from the location Mr. Fenn hid it in Wyoming -- an event widely reported in the news media (with photos of the recovered Chest and its contents) -- yet even that fact did not dissuade Mr. Erskine from continuing to pursue his groundless litigation. Instead, it emboldened him to expand his vitriolic attacks upon Mr. Fenn by accusing Mr. Stuef of being a "sockpuppet" purportedly enlisted by Mr. Fenn to fabricate an end to the search for the Chest solely to swindle Mr.

5

Erskine out of his reward.

Given Mr. Erskine's misguided obstinance, there was no possible way to obtain the dismissal of this matter other than through Defendant's successful litigation efforts. Indeed, Mr. Erskine has already informed counsel that he intends to continue his ill-considered crusade by appealing the Court's dismissal Order to the Ninth Circuit.

### C. Assessing Fees Against Plaintiff Would Not Cause Extreme Hardship

In a letter to Mr. Fenn dated February 13, 2020, Mr. Erskine stated that he is a "finance professional and consultant." [Doc 27-1] In a subsequent filing, Mr. Erskine identified himself as an "investment and risk professional" and portfolio manager. [Doc 37-1] Mr. Erskine would have the burden of proving any claim of extreme financial hardship from a fee award. *Woerth v. City of Flagstaff,* 167 Ariz. 412, 420 (App. 1990).

### D. Defendant Prevailed with Respect to All of the Relief Sought

Mr. Erskine's breach of contract claim sought title to the treasure Chest and its contents, valued at $2-3 million. Defendant's Rule 12(b)(3) Motion resulted in the complete dismissal of Mr. Erskine's Complaint.

### E. Novelty of the Legal Issues

The central legal question in this case -- whether personal jurisdiction was properly exercisable over Mr. Fenn -- was not novel, although made more difficult by Mr. Erskine's nearly incomprehensible Complaint and the "facts" relied upon in support of his jurisdiction claim. Moreover, Mr. Erskine greatly complicated the resolution of this matter by raising issues such as the transferability of this case under 28 U.S.C. § 1631, his alleged right to a supplemental pleading under Fed.R.Civ.P. 15(d), his opposition to the routine substitution of Ms. Old as the Personal Representative of Mr. Fenn's Estate, and his desire to join Mr. and Mrs. Fenn's Revocable Trust as a party to facilitate his perceived collection rights under New Mexico law.

### F. Whether any Claims or Defenses Had Been Previously Adjudicated in this Jurisdiction

Once again, the central issue of personal jurisdiction had been previously (and

frequently) adjudicated in this jurisdiction, but was made more difficult and complicated for the reasons discussed above.

### G. A Fee Award to the Estate Would not Discourage Other Parties with Tenable Claims from Litigating Legitimate Contract Issues

This case was dismissed on the basis of personal jurisdiction, not the merits of Mr. Erskine's breach of contract claim, so any award of attorneys' fees to the Estate would not discourage other parties from litigating legitimate contract issues. Moreover, the Court expressly found that Mr. Erskine's contract claim was not tenable.

### H. Applicable Legal Authority Supports the Estate's Request for an Award of the Attorneys' Fees Incurred in Preparing this Motion

"Arizona law supports the recovery of attorneys' fees incurred in preparing a fee application." *Gametech Int'l. Inc. v. Trend Gaming Sys., LLC,* 380 F.Supp.2d 1084, 1101 (D.Ariz. 2005) (citing *Schweiger v. China Doll Restaurant, Inc*., 138 Ariz. 183, 188 (App. 1983)). "[I]t takes considerable time in some cases for any 'reasonable and prudent lawyer' to prepare an attorney's fees application which 'militates the burden of the expense of litigation to establish a just claim or just defense' for the prevailing party." *Id.* (citing *Warner,* 143 Ariz. at 569). Thus, "[i]ncluding the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose of awarding such fees and does not constitute a windfall or double recovery." *Id.*

## II. THE AMOUNT OF FEES REQUESTED IS REASONABLE

In assessing the "reasonableness" of the amount of attorneys' fees for which an award is requested,

> The beginning point ... is the determination of the actual billing rate which the lawyer charged in the particular matter. *** Unlike public-rights litigation, and contingent-fee litigation, ... in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case.

7

*Schweiger,* 138 Ariz. at 187-88, *followed in Design Trend,* 103 F.Supp.3d at 1064. This case, of course, concerned a matter of commercial litigation (namely, the alleged breach of a unilateral contract) and as indicated in the attached Declarations of its undersigned counsel, the Estate was charged (and agreed to pay) a reduced amount of Sacks Tierney P.A.'s normal and customary prevailing hourly rates for one of the attorneys who worked on the successful defense of Mr. Erskine's Complaint, as well as the normal and customary hourly rates of Sommer Karnes & Associates.

As further explained in the benchmark opinion from the *Schweiger* case, the prevailing party is "'entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit' of a successful [outcome]." 138 Ariz. at 188 (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir.), cert. denied, 459 U.S. 1009 (1982)).[3] Moreover, *Schweiger* gave particular emphasis to the overall results obtained by the prevailing party, in addressing whether time spent on unsuccessful issues may be compensable:

> [O]ne claim for relief may involve related legal theories. "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, [461 U.S. 424, 435 (1983)]. Thus, where a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories.

---

[3] Attorneys' fees are also recoverable for time spent in "thinking about the case and how what is sought relates to an appropriate theory of defense. Courts rarely see time entries for thinking about the case, yet every lawyer worth his salt spends time doing that. Those entries ought not be reduced on the theory that the task described could be done faster without recognizing that more than the precise task listed was involved." *First Interstate Bank of Arizona, N.A. v. Simon*, 159 Ariz. 91, 92 (App. 1988). Computerized legal research charges may also be recovered as an element of an award of attorneys' fees under Section 12-341.01(A). *Ahwatukee Custom Estates Mgt. Ass'n, Inc. v. Bach,* 193 Ariz. 401, 404-05, ¶10 (1999), *followed in 11333, Inc. v. Certain Underwriters at Lloyd's London,* 2018 WL 1576863, at *2 (D.Ariz. March 30, 2018); *In re Liquidation of AZTAR Cas. Co.,* 189 Ariz. 27, 28-29 (App. 1996).

*Schweiger*, 138 Ariz. at 189, followed in *Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, 266-67, ¶24 (App. 2004). In other words, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. ***The result is what matters***." *Hensley*, 461 U.S. at 435 (emphasis added).

### A.   Time and Labor Required of Counsel

The attorneys at the two law firms employed by the Defendant billed a total of 248.2 hours in the successful defense of Plaintiff's Complaint. *See* Armstrong Decl., ¶12; Sommer Decl., ¶13. Major billable projects included (i) analyzing Mr. Erskine's confusing and voluminous pleadings, (ii) investigating the facts underlying Plaintiff's "unilateral contract" claim, (iii) researching and drafting Defendant's successful Motion to Dismiss and Reply, (iv) preparing the Declarations in support of that Motion, (v) responding to Plaintiff's Motions to Supplement the Complaint, Motion to Transfer Jurisdiction, Motion to Substitute Party, and improper letters to the Court, and (vi) researching and preparing the instant fee motion and its supporting documentation.

### B.   Novelty and Difficulty of the Questions Presented

While the question of whether personal jurisdiction existed in this case was not particularly novel, the same cannot be said for Mr. Erskine's convoluted "unilateral contract" claim. Moreover, the resolution of this matter was made considerably more difficult by the collateral issues unnecessarily raised by Mr. Erskine, as discussed in Section I.E above.

### C.   Skill Requisite to Perform the Legal Services Properly

The successful defense of this case required strategic planning and coordination, diligence, perseverance, patience, and creative thinking. Mr. Erskine's response to Defendant's personal jurisdiction motion was unfocused and included repeated and ever changing arguments over the purported "merit" of his breach of contract claims, as well as a flurry of ancillary and largely irrelevant motions and other filings concerning supplemental pleadings, "settlement" terms, his unnecessary and heavy-handed efforts to

9

personally serve Ms. Old (who had already appeared in the action) and a resulting bar complaint against Karl Sommer (since dismissed as groundless), New Mexico post-death community property liability and collection law, the "Gold Clause," and other obscure issues. Mr. Erskine's dense, antagonistic, and rambling writing style (often accompanied by pages and pages of exhibits) further increased defense counsel's work in simply trying to figure out what Mr. Erskine was saying most of the time.

### D. Preclusion of Other Employment by Counsel

As noted above, Sacks Tierney and Sommer Karnes & Associates billed a total of 248.2 hours in the successful defense of Plaintiff's Complaint. Both firms are highly regarded in the field of commercial litigation, and the attorneys involved in this action were required to schedule around other client matters. The time devoted to this case represented billable hours that neither firm could devote to other matters.

### E. Customary Fees Charged in Matters of this Type

James Armstrong, a shareholder in Sacks Tierney, was the principal draftsman and strategist for most of the Defendant's motion and other papers in this case. Mr. Armstrong's normal and customary hourly rate in commercial litigation matters like this one is $480, but he agreed to a reduced hourly rate of $425 for this case. Armstrong Decl., ¶9. Mr. Armstrong was assisted by his co-shareholder, Brian Ditsch, who was billed at his normal and customary hourly rate of $420, with the exception of his work in June 2020, which was billed at a reduced hourly rate of $400. *Id.,* ¶10. Karl Sommer, Defendant's longstanding personal attorney in Santa Fe, also billed a reduced hourly rate of $250 in likewise assisting in the successful defense of this case. Sommer Decl., ¶12.

### F. Whether the Contracted Fee is Fixed or Contingent

The attorneys' fees billed in this matter were based upon fixed hourly rates.

### G. Time Limitations Imposed by the Client or Circumstances

There were no time limitations in this matter other than those imposed by the Rules of Civil Procedure.

**H.     Amount of Money or Value of the Rights Involved, and the Results Obtained.**

Mr. Erskine himself valued the treasure Chest and its contents at $2-3 million, an amount the Estate believes to be reasonably accurate. [Doc 39-3, Ex. 1]  As a result of the Court's February 1 Order, Mr. Erskine's Complaint was dismissed in its entirety and he was awarded no relief. In addition, this was the third unsuccessful lawsuit against Mr. Fenn by disgruntled searchers for the Chest, and it was important to the Estate that Mr. Fenn's legacy be protected by vigorously defending the groundless claims against him.  It was also important that this case be dismissed (albeit without prejudice) in order to require Mr. Erskine to (hopefully) pause and reconsider commencing a new lawsuit in another state.

**I.     Experience, Reputation, and Ability of Counsel**

As described in the attached Declarations of counsel, the three attorneys for which fees are sought have more than 100 combined years of experience and ability in commercial litigation, including matters involving personal jurisdiction issues.  *See* Armstrong Decl., ¶¶1-2; Sommer Decl., ¶1.

**J.     "Undesirability" of the Case**

Other than having to litigate against a *pro se* plaintiff unfamiliar with the governing procedures of the Court, there were no aspects of this case that could be characterized as "undesirable."

**K.     Nature and Length of the Attorney-Client Professional Relationship**

Mr. Fenn engaged Sacks Tierney to represent him in this matter after the Complaint was served in June 2020, due to Mr. Erskine's ill-conceived decision to file his lawsuit in Arizona.  No professional relationship existed between the Defendant and Sacks Tierney prior to that date.  Mr. Fenn also engaged Sommer Karnes & Associates to represent him in this matter in June 2020.  Mr. Sommer has had a longstanding professional relationship with Mr. Fenn and his family for six years.

11

**L.     Awards in Similar Actions**

The Estate is unaware of any other actions similar to this one, nor of any fee awards in any such actions.

**M.     Other Matters Deemed Appropriate**

To avoid even an appearance of excessive, duplicative, or unreasonable charges, Sacks Tierney has not included among the fees claimed herein the work performed in this case by two of its paralegals and an associate attorney. Various other tasks have also not been charged or the time reduced. In addition, prior to the Court's Order of dismissal, counsel had researched and drafted (but not yet filed) a motion to strike Mr. Erskine's inflammatory, disrespectful, and wholly improper letter to the Court [Doc 40] of December 17, 2020, with a request for sanctions. Although that motion was prudently undertaken by counsel to protect their client's interests, attorneys' fees have not been sought for that effort.

**III.   CONCLUSION**

This case should have been decided solely on the issues of personal jurisdiction raised in the Motion to Dismiss filed by Mr. Fenn more than seven months ago. Instead, Mr. Erskine chose to greatly and unnecessarily expand the scope, expense, and burden of litigation with a series of unfounded filings and an increasingly caustic personal assault upon Mr. Fenn and his family. For all of the reasons discussed above, and particularly in light of the outstanding results obtained, Mr. Fenn's Estate respectfully asks that reasonable attorneys' fees be awarded under Section 12-341.01(A)-(B) in the sum of $98,891.57.

DATED this 12th day of February, 2021

SACKS TIERNEY P.A.

*/s/ James W. Armstrong*
James W. Armstrong
Brian E. Ditsch

SOMMER KARNES & ASSOCIATES

*/s/ Karl H. Sommer*
Karl H. Sommer

*Attorneys for Zoe Fenn Old, as Personal Representative of the Estate of Forrest Burke Fenn*

**CERTIFICATION OF CONSULTATION**

Pursuant to LRCiv 54.2(d)(1), I hereby certify that on Friday morning, February 12, 2021, counsel for Defendants Forrest Fenn, deceased, and for Zoe Fenn Old, Personal Representative for the Estate of Forrest Burke Fenn, personally consulted (by telephone) with Plaintiff Brian Erskine concerning disputed issues related to defendants' claim for attorneys' fees pursuant to A.R.S. § 12-341.01.  The participating attorneys were James Armstrong, Brian Ditsch and Karl Sommer.  Despite personal consultation and good faith efforts, defense counsel and Plaintiff Brian Erskine were not bale to successfully resolve any disputed issues relating to attorneys' fees.

*/s/ Brian E. Ditsch*

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301
*Plaintiff pro per*

                                                                             */s/ Toni Cooper*

[2937438]